# McCaffrey's Appeal.

105  253
160  218

1. The operation of a manufactory by day and night, in a city, which necessarily causes some noise and vibration in neighboring private residences, will not be restrained by injunction, where the evidence is not such as to satisfy a chancellor that the noise, &c., constitutes a substantial and unjustifiable nuisance to the complainant.

2. The proprietor of a newspaper erected a printing establishment in a section of the city of Philadelphia chiefly occupied by private residences, whereupon the owner and occupant of a neighboring dwelling house filed a bill in equity, averring a nuisance caused by noise and vibration of the steam machinery, and praying an injunction to prevent its operation at night, and otherwise to limit and restrain the manner of conducting the business. The cause was referred successively to an examiner, to a master and to a commission of three experts, the latter appointed by the court of its own motion. The evidence was so conflicting that the court, while refusing immediate relief by injunction, retained the bill "with leave to the complainant to apply for a further order should circumstances render it expedient." The court decreed that each party should pay his own costs, and one-half the costs of the commission of experts. *Held*, that there was no error in the action and decree of the court.

February 1, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term, 1884, No. 80.

Bill in equity, by J. Carroll McCaffrey and Eugenie, his wife, in her right, against James Elverson, setting forth that the complainants, being owners and occupiers of a certain dwelling house, No. 915 Spruce street, in the city of Philadelphia, were disturbed in the enjoyment of their residence by the noise and vibration of machinery in the defendant's printing house, which he had erected in a section of the city occupied by private residences, to wit, at the northwest corner of Ninth and Spruce streets, adjoining the house No. 913 Spruce street, which latter adjoins the complainant's house; and praying that the defendant be restrained from operating said machinery between the hours of 6 P. M. and 6 A. M., and from running the machinery in such a manner as to jar the plaintiff's house.

The defendant in his answer denied that the vibration jarred the complainant's house, and averred that he did not run his presses longer than was necessary for the purposes of his lawful business, and that he had adopted the best means known to him to reduce the amount of inconvenience occasioned by said operations.

The cause was referred to an examiner and subsequently to a master, who reported a decree perpetually enjoining the

respondent from running his presses between the hours of 8 o'clock P. M. and 6 o'clock A. M., and that the doors and windows of respondent's building, on the Spruce street side, be closed whenever the machinery and presses were in operation.

Exceptions were filed by both parties to the master's report, and after argument thereon, the court, of its own motion, appointed three persons as experts to visit the premises and report to the master; and referred the cause back to the master, who filed a supplemental report, which was not printed. The case was again argued on the exceptions filed to the master's report.

The evidence was voluminous and conflicting. The findings of fact by the court are stated in the following opinion by HARE, P. J.:

The respondent in this case carries on his business as the printer and publisher of a weekly newspaper, in a building which he erected for the purpose at the northwest corner of Spruce and Ninth, and the complainant resides at 915 Spruce street, two doors above. The bill avers that the respondent's presses are run day and night, and that the noise and vibration resulting from this cause, and from the working of the steam engine by which they are set in motion, disturbs the repose and quiet of the complainant's dwelling, prevents sleep, impairs the health of the occupants, and tends. to lessen the market value of his property. He therefore prays for an injunction to restrain the continuance of the respondent's business in its present form.

Various questions arise on the pleadings and evidence, which may be summed up under the following heads: Did the respondent use due care to prevent the transmission of sound by having an interstice between the walls of his buildings and the adjacent houses? Is it necessary that the presses should be worked at night during the hours which are ordinarily devoted to sleep? Are the noise and vibration such as materially to disturb the complainant's family, and entitle him to ask for the intervention of a court of equity to enjoin the respondent?

Without going into details, it is sufficient to say that the respondent could not, agreeably to the evidence, suspend the working of his presses during the night, without such serious detriment as would render his business unprofitable. Such a course would not merely necessitate the purchase of new printing presses, and the employment of additional workmen, but an enlargement of the building, for which there is not sufficient space.

As it regards the second head, we incline to think that the respondent was negligent in not adopting a precaution that

would obviously have tended to lessen the inconvenience that his business might otherwise produce to the occupants of the adjacent houses. One who erects a manufactory in a neighborhood used for dwellings, should pay due regard to the maxim, "*Sic utere tuo ut alienum non laedas;*" and suffer some abridgment of his own rights rather than cause unnecessary injury to others. Had the respondent, instead of building a party wall, left three inches between his printing house and the buildings on either side, sound could not have been directly transmitted, and he would, at all events, have done all that was in his power to render the prosecution of his business consistent with the repose and tranquillity of his neighbors.

We may now turn to the third head, the extent and nature of the disturbance which is alleged in the bill. Conceding that the respondent did not proceed with sufficient care and foresight in the construction of his building, it does not follow that he should be subjected to a restraint which may prove disastrous, by depriving him of his means of livelihood. In every judicial proceeding there should be a just proportion between the cause and consequence, the wrong complained of, and the redress afforded by the court. A wilful injury may justly be prevented at whatever cost, but the case is different where one who is proceeding in the ordinary course of a business that cannot profitably be conducted in any other way, incidentally inflicts an injury on others. Under these circumstances the question is relative, depending on the nature of the injury and the loss that will be occasioned by granting an injunction which, though nominally confined to a single point, covers the entire ground, and will compel the defendant to close his present establishment and move elsewhere. The injured party is entitled to such compensation in damages as a jury may think fit to award; but a chancellor ought not to intervene unless the evidence is so clear as not to admit of reasonable doubt. In this instance the testimony is conflicting; but the weight of the evidence appears to be that the noise which the bill describes as " overpowering, intolerable, crashing," and attended with a vibration which shakes the doors and windows, amounts to little more than the sound of the breakers on a distant beach, and that there is no vibration except that arising from the passage of vehicles through the street. This statement is to some extent fallacious, because the sound of the sea is associated with pleasing ideas, while that of the respondent's printing presses no doubt falls painfully on sensitive ears, which regard it as an unwarrantable disturbance of the quiet of the night. Such a difference is hardly a sufficient ground for the prohibition asked for in the bill; but we do not think that it should be dismissed, or that

the complainant's case is so entirely groundless that he ought to bear the respondent's costs. It may well be that the conflict of the evidence is due in part to observations made at different periods, and that the respondent's printing office was not conducted with as much care to avoid unnecessary disturbance before the bill was filed as it is at present.

Our decree, therefore, is that each party shall bear his own costs and share the expenses of the commission which we appointed to visit the premises, and that the bill be retained with leave to the complainant to apply for a further order, should circumstances render it expedient.

The injunction is refused. The exceptions filed by the defendants were sustained.

The complainants took this appeal and filed the following assignments of error:

The court below erred in sustaining the following exceptions filed by respondent to the master's report:

1. That the master erred in reporting that the use of his premises by the defendant is a nuisance to the plaintiff.

2. That he erred in reporting that the testimony proved that such use is a nuisance.

3. That he erred in reporting, as a fact, that such use is a nuisance.

4. That he erred in reporting that such use entitles the plaintiff to the relief prayed for, or to any relief in equity.

5. That he erred in reporting the form of decree set forth in the report.

6. The court below erred in refusing the decree of injunction prayed for, and in refusing relief to the complainants.

7. The court erred in receiving and considering, as evidence, testimony created and taken after the master had filed his report and findings of fact.

8. The court erred in not allowing costs to the complainants, and in ordering that the complainants bear their own costs and share the expenses of the commission appointed by the court.

*Thomas A. Fahy*, (*E. Coppée Mitchell* with him,) for the appellants.—The master reported substantially in our favor, both as to the facts and the relief, but the court, without reversing the master, of its own motion appointed a commission of three experts to examine the *locus in quo*, and make a report to the master. This was irregular. But even on their report the case was such as to warrant an injunction. The court below held, in the opinion filed, that "the respondent was negligent" in not adopting means in his power to render the operation of his machinery "consistent with the repose

and tranquillity of his neighbors," but nevertheless permitted him to continue his negligent nuisance. The refusal of the injunction was evidently founded on the fear of injuring the defendant, but that the court considered the complainant's case one for equitable interference is shown by the retention of the bill. While in equity courts have a discretion as to costs, it was unreasonable and unjustifiable to impose on complainants not only their own costs, but half the costs of the commission of experts appointed by the court: Marvine v. Drexel, 1 W. N. C., 323; Rogers v. Williams, 4 Brewster, 148; Winton's Appeal, 6 Norris, 77; Coleman v. Ross, 10 Wr., 180; Jones v. Wadsworth, 4 W. N. C., at p. 521.

*John G. Johnson*, for the appellee.

Chief Justice MERCUR delivered the opinion of the court, February 11, 1884.

A person who resides in the centre of a large city must not expect to be surrounded by the stillness which prevails in a rural district. He must necessarily hear some of the noise, and occasionally feel slight vibrations, produced by the movement and labor of its people, and by the hum of its mechanical industries. The aid of a court of equity may be invoked to keep annoying sounds within reasonable limits. Every noise however, is not a nuisance, nor, when produced in the exercise of a lawful occupation, should the strong arm of a chancellor necessarily be extended to suppress it.

Under the conflicting evidence in this case, both of the noise and of the vibratory effect of the working of the presses, and in view of the great damage which the appellee would sustain if he were enjoined against pursuing his business, we think the learned judge committed no error in refusing the injunction. The appellants have no just cause of complaint that a portion of the costs was imposed on them.

Decree affirmed and appeal dismissed at the costs of the appellants.