# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA

Alexander, Appellant, *v.* Wilkes-Barre Anthracite
Coal Company.

*Nuisance—Mines and mining—Proper operation—Equity—In-
junction—Evidence—Failure to call witness—Mining laws—Vio-
lation—Right of individual to complain.*

1. A private action for a public nuisance can be maintained
only by one who suffers some particular loss or damage beyond
that suffered by all others affected by the nuisance. Interference
with a common right does not·of itself afford à cause of action by
an individual.

2. So long as a mining company carries on its business in the
ordinary way, and adopts and uses the precautions usually and
customarily prevailing in the operation of such plants, it is not
accountable for the incidental annoyances and damages that neces-
sarily follow its mining operations.

3. Where in a suit in equity to restrain a mining company from
carrying on its mining operations, plaintiff alleged that the
operation of the mine was a nuisance, and it appeared that under
order of court plaintiff's engineer was allowed access to the breaker
and other structures for the purpose of inspecting the appliances
used in order to ascertain if anything was being done or omitted
which would lessen the nuisance complained of, and such engineer
was not called to testify at the hearing of the case, the court was
justified in taking into consideration the absence of the witness and
in assuming that he found no violation of the law and no ex-
isting conditions which a proper operation of the plant or the
adoption of other appliances, would remedy.

4. Where in such case it appeared that the mine was carried on in the usual manner, and that although there were violations of the State mining laws, relating to the construction of the breaker, such violations in no way contributed to the injury of plaintiff, the lower court did not err in dismissing the bill.

5. Under the Act of June 19, 1871, P. L. 1360, giving a private citizen the right to contest the power or authority of a corporation, to do acts injurious to private rights, and to decide whether the franchise to do the particular act has been conferred upon the corporation, the injury is limited to the question whether there was authority to do the thing complained of, and if it appear from the charter that the corporation has the power to do the particular act in controversy, the court is not warranted by the statute in restraining the doing of the act in question, at the suit of a private citizen whose rights are injured.

Argued April 10, 1916. Appeal, No. 434, Jan. T., 1915, by plaintiff, from decree of C. P. Luzerne Co., March T., 1914, No. 3, in equity, refusing an injunction, in case of Robert B. Alexander v. Wilkes-Barre Anthracite Coal Company and Elizabeth C. Alexander. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction. Before WOODWARD, J. The opinion of the Supreme Court states the facts.

The court on final hearing refused the injunction and dismissed the bill. Plaintiff appealed.

*Errors assigned* were various findings of fact and law of the trial judge and the decree of the court.

*John G. Johnson,* with him *John McGahren* and *R. B. Alexander,* for appellant.—The defendant company should be enjoined from the operation of its breaker, because its operation is a continuing nuisance and because it does not possess the right to maintain the breaker: U. S. v. Dickson, et al., 40 U. S. 141; Com., ex rel., Evans, v. Morss Hill Coal Co., 5 Lacka. Jur. 364; Com., ex rel., Roderick, v. Vipond, et al., 14 Pa. C. C. 357; Com. v.

Mann, 168 Pa. 290; Stuart v. Lehigh, 5 U. S. 299; U. S.
v. State Bank of No. Carolina, 31 U. S. 29; Edward's
Lessee v. Darby, 25 U. S. 206; Union Ins. Co. v. Hoge,
62 U. S. 35; U. S. v. Moore, 95 U. S. 760; Brown v. U. S.
113 U. S. 568; The Laura, 114 U. S. 411; U. S. v. John-
ston, 124 U. S. 236; Dollar Savings Bank v. U. S., 19
Wallace 227; McQuiston's Adoption, 238 Pa. 304; U. S.,
v. Lacher, 134 U. S. 624; Klinger, et al., v. Bickel, et al.,
117 Pa. 326; Alexander, et al., v. Kerr, 2 Rawle 83;
Kincaid's Appeal, 66 Pa. 411.

The learned court below erred in deciding that under
the Act of June 19, 1871, P. L. 1360, the plaintiff had no
standing to challenge the authority of the defendant cor-
poration to do the acts complained of: Edwards v. Pitts-
burgh Junc. R. R. Co., 215 Pa. 597; Groff's Appeal, 128
Pa. 621.

The defendant should use its premises in such a man-
ner that no injury will be caused to the plaintiff: Pfeiffer
v. Brown, 165 Pa. 267; Sullivan v. Jones & Laughlin
Steel Co., 208 Pa. 540; Harvey v. Susquehanna Coal Co.,
201 Pa. 63; Walters v. McElroy, 151 Pa. 549; Keppel v.
Lehigh Coal & Nav. Co., 200 Pa. 649; Wheatley v. Baugh,
25 Pa. 528; Hoy v. Sterrett, 2 Watts 327; Woelpper v.
Penna. Water & Power Co., 250 Pa. 559.

*Benj. R. Jones,* for appellee.—The plaintiff has no
remedy in equity for alleged violations of the Anthracite
Mine Law: the duty to enforce that law belongs to the
mine inspector: Sparhawk v. Union Passenger Ry. Co.,
54 Pa. 401; Cumberland Val. R. R. Company's App., 62
Pa. 218; Evans v. Reading Chemical Fertilizing Co., 160
Pa. 209; Klein v. Livingston Club, 177 Pa. 224.

The plaintiff has no standing to maintain its bill under
the Act of June 19, 1871, P. L. 360: Blauch v. Johnstown
Water Co., 247 Pa. 71.

The operation of the breaker, washery and boilers is
not a nuisance: Penna. Coal Co. v. Sanderson, 113 Pa.
126; Strauss v. Barnett, 140 Pa. 111; McCaffrey's App.,

105 Pa. 253; Alexander v. Stewart Bread Co., 21 Pa. Superior Ct. 526; Keiser v. Mahanoy Gas Co., 143 Pa. 276; Price v. Grantz, 118 Pa. 402; Gold v. City of Philadelphia, 115 Pa. 184; Farver v. American Car & Foundry Co., 24 Pa. Superior Ct. 579.

OPINION BY MR. JUSTICE FRAZER, May 15, 1916:

Defendant corporation operates a colliery situated along North Pennsylvania avenue, in the City of Wilkes-Barre, which was opened and first operated in 1882. In 1902 or 1903, following a suspension of mining for a time, and previous to renewing operations, improvements were made to the plant by the erection of a new breaker, a boiler plant and a washery; and later, in 1913, by the installation of four additional boilers. The new buildings were erected on the site of structures that had been in existence since 1882. In 1908 a receiver was appointed for the company at that time owning the colliery, and in 1910 the property was sold at receiver's sale; subsequently becoming vested in defendant company, and since that time operated by it. In 1909 Elizabeth C. Alexander, plaintiff's mother, the other defendant, purchased a lot of ground on North Pennsylvania avenue opposite the colliery, and erected a dwelling thereon in which she and her family have since resided. Following the resumption of mining at the colliery in 1910, Mrs. Alexander, through her son, the plaintiff in these proceedings, complained to defendant company of annoyance, and damage to her property, by dust escaping from the breaker, and the vibration caused by a ventilating fan operated on defendant's premises, and requested that the cause of the injury be abated. On the company's failure to suppress, or lessen, the vibration caused by the fan, a bill in equity was filed by Mrs. Alexander to enjoin its use; and in 1913 a second proceeding was instituted in which she alleged damage to her dwelling due to the operation of the washery. Both proceedings are pending and undetermined. In the meantime complaint

had been made to the State mine inspector, together with
a request that an investigation of defendant's premises·
be made, and asking that he proceed against the company
if violations of the mining laws were found to exist.  In
response to the complaint the inspector made an investi-
gation of defendant's plant, and reported that he found
no violation of the law sufficient to warrant an applica-
tion to the courts for an injunction to restrain the oper-
ation of the colliery.  The inspector, however, informed
Mrs. Alexander that defendant company would be noti-
fied to make certain changes in the location of the open-
ing of the air shaft, which was done by the inspector, and
the request complied with by the company.  Plaintiff, in
the meantime, having received from his mother a deed
for an undivided half interest in the property, instituted
proceedings in equity against the defendant company in
which he complained of damage to the property caused
by the operation of the colliery, and asked that an in-
junction be awarded preliminary until final hearing,
and thereafter perpetual.  Before the motion for a pre-
liminary injunction was disposed of, plaintiff moved the
court to dismiss his bill without prejudice, which was
done, and immediately following that action he pe-
titioned this court to assume original jurisdiction, which
we declined to do, and refused his petition.  Whereupon
he began the present proceedings.  The court below re-
fused his motion for a preliminary injunction, and upon
final hearing dismissed the bill.  From this action plain-
tiff appealed.

The City of Wilkes-Barre is located in the anthracite
coal mining regions, there being at least seven other coal
mining operations within the limits of the city near the
location of defendant's mine, and in addition to these in-
dustries the locality contains a number of manufacturing
and other enterprises.  Defendant's colliery has been in
operation since 1882, with the exception of about three
years, and represents an investment of half a million
dollars.  In connection with the mining of anthracite

coal the erection and use of breakers, washeries, fans, and other machinery, is a necessary and usual incident in the operation of such mines, and a certain amount of noise and dust will necessarily result from carrying on the business, and must be expected and endured by persons who take up their residence in a neighborhood devoted to such industries. Defendant's business is a lawful one, consisting of the development of the natural resources of the land, in which the interests of the entire, community are concerned, and for which large expenditures have been made; and, so long as defendant carries on its business in the ordinary way, and adopts and uses the precautions usually and customarily prevailing in the operation of such plants, as has been done in this case, it is not accountable for incidental annoyances and damages that necessarily follow its mining operations: Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126; Straus v. Barnett, 140 Pa. 111; McCaffrey's App., 105 Pa. 253. The court below found, as matter of fact, that defendant's plant and equipment are such as are usual in the particular locality, and in common and ordinary use in the operation of anthracite coal mining. This finding is fully justified by the evidence, in fact the court in giving weight to the testimony could not have reached a contrary conclusion. The fourth prayer of plaintiff's bill is for an order on defendant company to allow plaintiff's engineer access to its breaker and other structures for the purpose of inspecting the appliances used in the preparation of coal, and ascertaining if anything was being done or omitted which would lessen the nuisance by preventing the emission of the dust complained of. This order was made as requested, and an inspection of defendant's mines and buildings permitted by plaintiff's engineer, who was not called to testify on the trial. That the court was justified in taking into consideration the absence of this witness, and in assuming he found no violation of the law and no existing condition which a

proper operation of the plant, or the adoption of other appliances, would remedy, cannot be questioned.

Plaintiff in his bill further avers defendant violated the provisions of the mining law of June 2, 1891, P. L. 176, by—(1) erecting its breaker within two hundred feet of the mouth of the main hoisting shaft, (2) in constructing the washery in too close proximity to the fan house, and (3) in not properly placing and erecting the boilers above referred to. These violations of the act, assuming them to be such, the court below has found did not in any way injure or affect plaintiff in either his health or his property. As stated before a new breaker was built in 1903 on the site of the original one of 1882, and, upon application by the mine inspector for an injunction to restrain the rebuilding of the structure, the court dissolved the preliminary injunction, and in the present case held the decree in that case to be res adjudicata of the question whether in that respect there was a violation of the mining laws. Aside from this, plaintiff is without standing to complain of infractions of the mining laws in a proceeding of this character. The complaint here is that he is being inconvenienced and damaged by smoke, noise and dust, caused by the proximity of defendant's works to his residence and the vibration of machinery used in operating its plant. It does not appear how compliance with the mining laws with respect to the location of buildings would, in any way, lessen the nuisance complained of. So far as the evidence shows the structures might be separated as required by the act, and yet be, perhaps, as near plaintiff's property as now situated or possibly nearer. The sole question raised here is whether or not plaintiff is damaged, and if so, has he the right to restrain the operation of the plant, if necessary to avoid a continuation of the damage. The finding of the court below is that plaintiff is not affected by the relative location of the defendant's buildings with respect to each other, and a review of the evidence has convinced us of the correctness of this con-

clusion. In this case the circumstances do not require us to decide whether, under any conditions, an individual possesses the right by action in his individual name to enforce the mining laws, or whether that duty is devolved solely upon the inspector of mines under Article XV, Section 1, of the Act of 1891. The purpose of that enactment is to protect the community as well as those employed in the mines, and the rights of plaintiff are the same as the rights of every other member of the community if he suffers no special injury by its violation. The remedy to restrain acts prejudicial to the interest of the public must be in accordance with the provisions of the law, or, in absence of express provisions, by the proper public officers, and cannot be accomplished by a proceeding in equity by an individual. A private action for a public nuisance can be maintained only by one who suffers some particular loss or damage beyond that suffered by all others affected by the nuisance. Interference with a common right does not of itself afford a cause of action by an individual : Knowles v. Penna. R. R. Co., 175 Pa. 623. In Rhyner v. Fretz, 206 Pa. 230, 232, it was said by this court, quoting from Mechling, et al., v. Kittanning Bridge Co., 1 Grant (Pa.) 416—"Private citizens have no right of action, either in law or equity, for the suppression of a public nuisance, unless on averring and proving some special damage to themselves...... For a nuisance that is merely a public wrong only a public action can be brought and that must be done by the proper public functionaries." Likewise, equity will not enforce a penalty, or enjoin the commission of crime, at the instance of an individual where there is no special injury to private rights: Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401; Klein v. Livingston Club, 177 Pa. 224. Had plaintiff shown a special damage to himself, by reason of the location of defendant's buildings and machinery within a distance of each other prohibited by the State mining laws, a case would have been presented for the enforcement of the mining laws at the instance of an

individual specially damaged. This he failed to do, as his evidence established the only damage sustained by him to be due to the operation of the colliery in a particular neighborhood, there being no evidence that the removal of a building so as to comply with the provisions of the mining laws would lessen, or tend to prevent, the injury complained of.

Neither does the Act of June 19, 1871, P. L. 1360, assist plaintiff. That act merely gives a private citizen the right to contest the power or authority of a corporation to do certain things injurious to private rights, and to decide whether the franchise to do the particular act has been conferred upon the corporation. Under its provisions the inquiry is limited to the question whether there was a grant to do the thing complained of. If so, the court is without authority to interfere: Blauch v. Johnstown Water Co., 247 Pa. 71. In the case cited it was said, quoting from Western Penna. R. R. Co.'s App., 104 Pa. 399: "The Act of 1871 contemplates nothing more than that it shall be made to appear from the charter that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant, but when we get beyond this we assume something with which we have no business in a collateral proceeding: we assume to assert the right of a third party, the Commonwealth, who may or may not at her own option insist upon the observance of those rights."

The decree is affirmed.