## Guarina, Appellant, *v.* Bogart.

Argued January 9, 1962.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*George A. Yavorek,* for appellants.

No argument was made nor brief submitted for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 3, 1962:

On June 22, 1949, the defendants in this case, Leonard and Marjorie Bogart, leased in Springbook Township, Lackawanna County, a drive-in motion picture theatre equipped with a screen 16 x 20 feet and the usual accoutrements for such an operation, together with a house and restaurant on a lot 200 by 200 feet. The land space accommodated forty automobiles. In 1955 the Bogarts purchased this property and during the following year remodeled the premises, adding liv-

ing quarters to the house and extending the facilities of the restaurant, all at a cost of $15,000.

Before the defendants undertook this reconstruction and renovation, that is to say, in September, 1950, the plaintiffs here, Leonard and Loretta Guarina, bought a lot of ground immediately adjacent to the drive-in theatre and they also reconstructed the building on their land, developing it into a modern attractive home with a value which coincidentally equalled the value of the work done by the defendants, namely, $15,000.

It is not necessary to describe a drive-in theatre since it is now one of the phenomena of modern nocturnal entertainment and its functioning is apparent even to those who are not patrons. The occupants of automobiles passing in the night often get gratuitous glimpses of the film being shown at these outdoor cinemas because the screens are large enough to project enormous images which are visible from great distances. However, the motoring travelers who attempt to follow the story unfolding on the screen of the usual drive-in theatre find their free enjoyment considerably curtailed because no sound emerges from the shadowy figures accomplishing their make-believe deeds, heroic or villainous, as they may be. The dialogue is conveyed exclusively to the theatre patrons by means of wire conducting directly into the parked cars in which the patrons sit with all the comfort and privacy of a parlor at home. This restricted conveyance of voice, music, battle sounds and other audible phenomena descriptive of the action on the screen thus becomes private property and private enjoyment.

This, however, is not the case in the Bogart Theatre in Springbrook Township. The proprietors do not pipe the sound into the cars of their patrons. They give it to the world through large amplifying horns hung in trees, one of which aims at the plaintiffs' home, from a distance of only 102 feet. In consequence, all the

dialogue, battle action between the Indians and the United States cavalry, gun fights between gangsters and the police, aerial jousting between airplanes locked in mortal conflict above the clouds, music (melodious and cacophonous) hits the home of the plaintiffs, turning what should be a haven of quiet and tranquillity into a bedlam of sound.

It is because of this clamor, tumult and uproar, which prevents conversation, precludes sleep, and destroys relaxation and repose that the Guarinas, in 1960, brought an action in equity in the Court of Common Pleas of Lackawanna County. They stated in their complaint, that in an endeavor to obtain relief from the auditory flagellation to which they are subjected that they close their windows, but that on sultry nights this cure is as bad as the disease because they thus deprive themselves of ventilation and consequently their health has been grievously affected. The plaintiffs state also that in addition to the blasting invasion of their homes through the mighty horns perched in the trees, they are disturbed by "the continuous and spasmodic loud and raucous blowing of automobile horns, the glare of high powered lights, and the constant passing and repassing and parking of automobiles at all hours of the night in the vicinity of Plaintiffs' house and grounds."

For these reasons, the plaintiffs asked for an injunction to compel the defendants to cease and abate what they maintain is a nuisance in the eyes and ears of the law.

The defendants denied that their theatre emits loud, boisterous, intolerable and objectionable noises and that if the plaintiffs are annoyed by what they hear it is only because of "their peculiar sensitivity to sound." Moreover, the defendants contended in their answer that the plaintiffs knew what they were moving into when they purchased their property in 1950. Also, that

if they were disturbed by the operation of the defendants' business they should not have waited until 1960 to apply to the law for a redress of their grievance, although the defendants did admit the plaintiffs had requested them to "close their place of business." The defendants pointed out, in addition, that the theatre operates only four nights weekly.

The cause came on for a hearing before a chancellor who, after taking considerable testimony, concluded that the operation of the defendant's business does not constitute a private nuisance and accordingly denied the prayed-for relief.

The plaintiffs appealed.

The chancellor, in his findings of fact, acknowledged that the operation of the defendants' business rendered "substantial annoyance and discomfort" to the plaintiffs, "requiring plaintiffs, whether alone or with their family or with visitors, to close the windows. When the windows were closed in the summertime, the house is rendered uncomfortable and even with windows closed the noise persists in a jumbled and irritating fashion."

But the chancellor concluded that: "The social utility of the conduct of defendants' business in an area particularly adaptable therefor outweighs the gravity of the harm to a householder who with foreknowledge of conditions established his household within an orbit of sensation generated by the operation of the business."

This conclusion presupposes that the defendants are running their theatre for the social benefit of the neighborhood. But this is not in accordance with the facts. The defendants are engaged in a profitable enterprise. They charge a price for the entertainment they offer to the public (which, of course, they most assuredly have the right to do) but they cannot for the sake of gratify-

ing their clients bring substantial harm to people who are not clients.

In the case of *Anderson v. Guerrein,* 346 Pa. 80, 83, which also involved the operation of an outdoor drive-in theatre to the intolerable annoyance of neighbors, this Court, in sustaining an injunction, said: "The operation of the theatre is neither a public duty nor a private necessity, and if defendants cannot operate it, for whatever reason, without depriving plaintiffs of the normal enjoyment of their homes, they must abandon the enterprise altogether."

The court below sought to distinguish the *Anderson* case because there the drive-in theatre was located immediately adjacent to a heavily populated residential neighborhood, whereas in this case, as found by the chancellor, "the neighborhood is predominantly rural." But this distinction finds support neither in logic nor law. The person who lives in the country has possibly a greater right to peace and tranquillity than one who abides in the middle of the city. That is the principal reason which impels many people to get back close to nature. In the case of *Kohr v. Weber,* 402 Pa. 63, the defendant who operated an automobile race track maintained that adjoining property owners had no right to complain about noises and distraction because this was, after all, agricultural country. But we held that "Even assuming that the involved area is principally agricultural, this does not take away from the landowner his right to the natural use and enjoyment of his property. A person who buys residential property in the country because he expects to find the peace and serenity missing in urban centers may have a greater claim than the urbanite to protection from abnormal noises which disturb his rest, ruin his rest, and deprive him of the tranquillity associated from time immemorial with a suburban abode."

The chancellor stated in his adjudication that "rural areas are distinctly adaptable to the operation of such enterprises as drive-in theatres." This undoubtedly is true but then a rural area is equally adaptable to the operations of a fireworks factory or a dynamite plant or even a missile testing ground. However, the sole criterion of propriety and legality for the erection and operation of any particular business is not the utilitarian value and profit-making potentialities the business offers its owner but its general setting of good in the whole living panorama of society, so that no one will suffer unnecessarily from its presence and especially that no preventable harm will result to the health, safety and security of all those involved.

The chancellor said further in his adjudication that: "it is difficult to see why the interest of a single householder who happens to build his house, even on his own property, in a location susceptible to being affected by defendants' business, can cause a disruption of that business or even a substantial change in its method of operation."

The interest of a "single householder" is, however, not to be treated lightly. A man's home may no longer be his castle in the classic sense but it is still the depository of sovereign rights, one of which is the inevitable and inalienable right to peace and tranquillity consistent with the rights of his neighbors.

The person who lives in the middle of a city cannot, of course, ask to be immunized from the effects of the turbulence, traffic and noises which are inevitably part of urban life,* but the person who moves into a rural area to escape such turbulence, traffic and noises has the right to ask the law to bar turbulence, traffic and noises from pursuing him.

The drive-in theatre business is, of course, a lawful business, but any lawful business may become a nui-

---

* *McCaffrey's Appeal*, 105 Pa. 253.

sance in fact because of its place and method of operation and deleterious effect on the enjoyment of property which is being devoted to a use consistent with the character of the locality.

The chancellor underscores the fact that when the plaintiffs moved into their home the defendants already were operating their theatre and concludes from that circumstance that they may not complain of a situation of which they were aware when they purchased their land. But if the defendants operated and still operate a nuisance, the priority of their nuisance does not overcome the rights of property owners to a full enjoyment of their property. No one has the right to carry on a business injurious to the health of a neighborhood simply because he sets up and is doing an injuring business before the law gets around to calling him to account.

Contrary to some popular belief the law is not all mechanics and technicalities entirely removed from and unconcerned over the social obligations involved in a decent and well-behaved society. The most fundamental principle of justice: "So use your own as not to injure another" (also called the Golden Rule) is a factor which is not to be ignored in the consideration of problems presented in a court of equity. In the case of *Pennsylvania Lead Co.'s Appeal,* 96 Pa. 116, 127, this Court said: "Where justice is properly administered rights are never measured by their mere money value, neither are wrongs tolerated because it may be to the advantage of the powerful to impose upon the weak. Whether it be the great corporation with its lead works, or the mechanic with his tin shop, the rule is the same: *'So use your own as not to injure another.'* " (Emphasis supplied.)

The defendants further contend that the plaintiffs are not entitled to the equitable relief they seek because their action was not instituted until the defendants had made substantial improvements on their property. The

record shows and the court found as a fact that the substantial improvements referred to consisted mainly of rebuilding the restaurant and adding rooms to the dwelling on the property for the defendants' use. These improvements can continue to be utilized by the defendants. In *Hostetter v. Sterner's Grocery*, 390 Pa. 170, we rejected the defense of laches since it was established that the structure erected by the defendant could be utilized as a garage as well as for a slaughterhouse (which use was being restrained). The flag has never been lowered on the proposition that "laches will not be imputed to a plaintiff where no injury results to defendant by reason of the delay."

The Court found that: "11. Plaintiffs have no objection to the operation of the theatre as a drive-in theatre provided that the noise emanating therefrom can be reduced, or the discomfort therefrom eliminated by the use of individual car loud speakers. 12. It is possible and practicable for the defendants to install an individual car speaker system at a cost estimated from approximately $350 to upwards of $500, all excluding labor costs."

Thus, "it is possible and practicable" for the defendants to install individual car speakers at a cost which does not appear to be disproportionate to the benefits to be gained in that manner by neighboring property owners who are entitled to the enjoyment of the historical and tradition-bound quietude of a rural residence. We take judicial notice of the fact that most drive-in theatres today have such individual car speakers which of itself demonstrates the reasonableness of this additional investment in order to bring about a proper method of operation.

Since we have concluded that the defendants' present method of operating their drive-in theatre in a rural residential area constitutes a nuisance, it becomes their duty to adopt such ameliorating devices as

will abate their interference with the plaintiffs' quiet enjoyment of their property. The defendants are fortunate in that the indicated devices are available at reasonable cost of equipment plus labor. In the case of *Collins v. Wayne Iron Works*, 227 Pa. 326, even though the Court said that the noises of nearby trains should be considered as normally affecting the standard of comfort prevailing in the plaintiff's locality, nevertheless "an important question is, Can the noise by any reasonable means be so moderated as to accord with the degree of quietness the plaintiff has a right to enjoy; and, if it can, by what means?" Thus, if the court is required to ask such a question where the plaintiff's standard of comfort is affected by noises to which they must be reconciled, how much more should the question be asked where the plaintiffs are entitled to the peace and quiet consistent with the standard of comfort prevailing in a rural residential area?

We accordingly hold that since the defendants' present method of operating their drive-in theatre constitutes a nuisance, the court below should have so concluded as a matter of law on the facts found by it, and should have ordered the defendants to modify their method of operation through the installation of individual car speakers. As the defendants are entitled to an explicit order as to what they may or may not do (*Collins v. Wayne Iron Works*, supra), the decree of the court below is reversed with directions that it enter a decree consistent with this opinion.

Decree reversed, costs to be borne equally.