Quincy LEE, Appellant,

v.

Edgar B. BOWLES et al., Appellees.

No. 14425.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 1, 1965.

Rehearing Denied Dec. 29, 1965.

Foster, Lewis, Langley, Gardner & Hawn, Willis T. Taylor, San Antonio, for appellant.

Dayton G. Wiley, Peter N. Plumb, Lewin Plunkett, San Antonio, for appellees.

BARROW, Justice.

Appellant, Quincy Lee, brought this suit to permanently enjoin appellees, Edgar B. Bowles and Pan American Speedway, from establishing, operating and maintaining an automobile race track and drag strip on a tract of land owned by appellees and located near appellant's residence in a predominantly rural area, a few miles north of San Antonio.

The jury found that the contemplated use of appellees' property as a race track, alone or combined with a drag strip, would substantially interfere with the reasonable use of appellant's property as a home, by a person of ordinary sensibilities, tastes and habits. The issue of balancing of equities was severed on motion of appellant and following the jury trial, a hearing was had before the court on this issue. After this hearing, a judgment was entered wherein the court concluded from the verdict of the jury that the contemplated use of appellees' property without a drag strip would be a nuisance; however, the court found that the equities were in favor of the appellees and the community, and that the injunctive relief sought by appellant against the proposed use of appellees' property as a race track should be denied.

Judgment was entered permanently enjoining appellees from establishing, operating and maintaining a drag strip upon their property, but denying appellant injunctive relief against the proposed race track. Appellant complains of the denial of this injunctive relief and urges that the doctrine of balancing of equities is not applicable, and that the trial court abused its discretion in not enjoining both proposed activities. In the alternative, appellant urges that the judgment should be modified to limit the race track operations. Appellees do not complain of the judgment as entered, but assert by cross-assignments several prejudicial errors occuring in the trial.

Appellant's home, which was constructed in 1962 at a cost of almost $100,000, is located on a small hill near the intersection of Toepperwein Road and the access road west of I.H. 35. With the exception of the land adjoining I.H. 35, most of the land in the areas is rural countryside with only a few residences. In January, 1965, appellees purchased an 85-acre tract northwest of appellant's home and commenced construction of a race track. Appellant learned of this fact about the middle of January and promptly consulted an attorney. This suit, seeking injunctive relief only, was filed on February 10. At this time appellees had expended or become obligated for over $100,000. However, little actual construction had been accomplished before the suit was filed, and appellees did not try to cancel any of their contractual obligations after learning of appellant's objections. The planned oval track is 2800 feet from appellant's home at the closest point.

Appellant's complaints relate primarily to the noise which would be made by the racing automobiles, although there was evidence of traffic congestion on Toepperwein Road created by patrons going to and from the track, and of litter which might be dropped in the area by the patrons. There was evidence that although appellant's home was air-conditioned, his family enjoyed outdoor living and spent most of their leisure time outside the house and around their swimming pool and patio. Appellant admitted that his home was very close to I.H. 35, which was heavily traveled, and that the flight pattern for Randolph Air Force Base was close to his home. He testified that he had bought the property knowing of the sounds created by these sources, and, although they could sometimes be heard in the home, these sounds did not disturb the family.

Expert witnesses were called by appellant, who testified to experiments whereby measurements of the sounds of a Houston oval race track and a Victoria drag strip were projected to appellant's property and the noise level measured. There was testimony that the average noise level created by racers on the oval track as proposed by appellees would double the average noise level created by the highway traffic. While the airplane jets might create a louder sound at times, this sound was very infrequent and of short duration. The racing cars are not equipped with a muffler and therefore make much more noise than ordinary traffic. An expert witness testified that ordinary conversation could not be accomplished on appellant's patio during the races at a greater distance than one to four feet, and that sleep would be difficult unless appellant's house was closed. This testimony was corroborated by lay witnesses.

Appellees' track is located on the north side of Toepperwein Road, about one-half mile west of the access road of I.H. 35, and is between this access road and Lookout Road. Nacogdoches Road is a short distance west of Lookout Road. It was anticipated by appellant's witnesses that most of the traffic would go to the track via I.H. 35. A traffic engineer testified that based upon Bowles' estimate of 2000 cars arriving in the hour preceding start of the program, traffic conditions would be very congested on Toepperwein Road. Appellees contemplated selling drinks in paper cups as well as hot dogs and concern was expressed by several witnesses as to whether these papers and wrappers would litter the countryside.

As races had not been conducted at this site, most of the evidence relative to the noise and congestion was necessarily based upon the opinion of experts and experiments conducted by them. Appellees previously had operated a race track for several years at a location within the city limits. This operation was on a smaller scale and was abandoned by appellees in October, 1964, because of their inability to secure a long-term lease. Several witnesses testified concerning the sounds from this track. There was evidence from one witness called by appellant that the noise was very disturbing, and appellees produced several witnesses who had lived nearby and they testified that the sounds from the old speedway did not annoy them.

■ Appellant urges the doctrine of balancing the equities should not be applied in this case, as appellees did not show a public necessity for the race track, but rather a purpose of private profit. The track was planned in an unzoned area and the proposed operation was a lawful business. The case therefore involves the conflicting rights of two lawful owners. The courts have consistently recognized that the abatement of a lawful place of business is a harsh remedy. The trial court properly heard evidence on the question of balancing the equities to determine if an injunction should be granted. Hindman v. Texas Lime Co., 157 Tex. 592, 305 S.W.2d 947 (1957), affirming Tex.Civ.App., 300 S.W.2d 112; Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615 (1950); Garland Grain Co. v. D–C Home Owners

Improvement Ass'n., Tex.Civ.App., 393 S. W.2d 635, wr. ref., n. r. e.; Hill v. Villarreal, Tex.Civ.App., 383 S.W.2d 463, wr. ref. n. r. e.; Georg v. Animal Defense League, Tex. Civ.App., 231 S.W.2d 807, wr. ref. n. r. e.

Thirteen witnesses, including three State Representatives from Bexar County, the Sheriff of Bexar County, a San Antonio hotel manager, and a professional sports writer, testified that the proposed race track would be an asset and beneficial to San Antonio and Bexar County. There was evidence that automobile racing is the second most popular sport in the United States from the standpoint of number of paid spectators, and is gaining in popularity; that this track would help the economy of the area and stimulate tourist trade; that there were sufficient people in Bexar County interested in this sport to support a race track. Several residents in the immediate vicinity of the track testified it would stimulate growth in their area. A realtor testified appellees' land was suitable for a race track and that this was the highest and best use of this land. There was evidence that there was no other location in Bexar County that would not be within one-half mile of a residence and subject to the same objections raised by appellant.

Appellee Bowles testified the track would be operated in a manner so as to interfere as little as possible with appellant's home life. He said the track season would be five months, from May to late September and would operate primarily on Saturday nights, with the racing program ending by 10:00 p. m. He promised that Toepperwein Road would be paved before the track opened and the track parking lot would be paved if excessive dust was created. Officers would be hired to handle traffic congestion and the entire area would be kept free of debris.

The evidence showed that appellant's swimming pool and patio are on the opposite side of his house from the track site, and that the prevailing wind during the track season would blow from the residence toward the track. The noise level would be greatly diminished inside appellant's home.

In Repka v. American National Ins. Co., 143 Tex. 542, 186 S.W.2d 977 (1945), the Supreme Court recognized the general rule that the granting or refusal of an injunction is ordinarily within the sound discretion of the trial judge, and his action will be reversed only when a clear abuse of that discretion is shown. Injunction is an equitable proceeding and is only available where the remedies at law are inadequate. Rule 693, Texas Rules of Civil Procedure; King's Estate v. School Trustees of Willacy County, Tex.Civ.App., 33 S.W.2d 783, wr. ref.

Appellant urges that the doctrine of balancing the equities should be applied only where a public necessity is shown. In Storey v. Central Hide & Rendering Co., supra, the Court required a balancing of equities and quoted with approval 31 Tex. Jur. 448, which reads in part as follows: "According to the doctrine of 'comparative injury' or 'balancing of equities' the court will consider the injury which may result to the defendant and the public by granting the injunction as well as the injury to be sustained by the complainant if the writ be denied. If the court finds that the injury to the complainant is slight in comparison to the injury caused the defendant and the public by enjoining the nuisance, relief will ordinarily be refused. It has been pointed out that the cases in which a nuisance is permitted to exist under this doctrine are based on the stern rule of necessity rather than on the right of the author of the nuisance to work a hurt, or injury to his neighbor. The necessity of others may compel the injured party to seek relief by way of an action at law for damages rather than by a suit in equity to abate the nuisance."

In *Storey* the Supreme Court affirmed the action of the Court of Civil Appeals in reversing the trial court's action in permanently enjoining the operation of a rendering plant. This Court recently affirmed a

trial court's balancing of the equities in favor of operation of a rendering plant. See Hill v. Villarreal, supra. The doctrine of balancing of the equities has been applied in other cases in which the public necessity has not been as dramatically shown and where private proprietory interests were involved. Hindman v. Texas Lime Co., supra, involved a plant manufacturing lime products; Georg v. Animal Defense League involved an animal shelter for stray dogs. In Lamb v. Kinslow, Tex. Civ.App., 256 S.W.2d 903, the rule was applied, but the trial court found that the equities were against the burning of cotton burrs by the gin. Fargason v. Economy Furniture Co., Tex.Civ.App., 356 S.W.2d 212, balanced the equities in favor of operation of a furniture plant; and in Garland Grain Co. v. D–C Home Owners Improvement Association, supra, the Court of Civil Appeals balanced the equities in favor of operation of a feed lot.

■ The evidence in this case justified a finding by the trial court that the public generally would benefit from the operation of this track, both from a standpoint of recreational value and as an economic asset. Further, there was no showing that the proposed location was unsuitable.

Appellant cites several out-of-state authorities involving race tracks. Sakler v. Huls, Ohio Com.Pl., 183 N.E.2d 152, and Shew v. Deremer, 203 N.E.2d 863, are opinions of Ohio trial courts wherein the trial court granted the injunctions against a race track. They therefore are not applicable in our case, where the chancellor has balanced the equities in favor of operation of the race track. In Kohr v. Weber, 402 Pa. 63, 166 A.2d 871 (1960), the trial court enjoined operation of a drag strip and the Supreme Court affirmed. In Hooks v. Inter. Speedways, Inc. (1965), 263 N.C. 686, 140 S.E.2d 387 the Court held that church officials alleged a cause of action to enjoin construction of a race track close to the eighty-year-old church, where evidence showed that church services would

be disturbed. The only case cited by appellant wherein the chancellor's decision was reversed is Guarina v. Bogart, 407 Pa. 307, 180 A.2d 557, 93 A.L.R.2d 1165 (1962), where a drive-in theatre used public loud speakers in lieu of individual car speakers which could have been installed at a small cost. The Supreme Court reversed the case and, although not shutting down the theatre, required it to install car speakers.

■ Appellant urges that an abuse of discretion is shown in that the trial court enjoined appellees' operation of a drag strip, while refusing to enjoin a race track. It is seen, however, that appellee Bowles and his attorneys stated in open court that appellees had abandoned their intention to construct a drag strip and were willing to be enjoined from constructing same.

The balancing of equities was an issue to be determined by the chancellor in accordance with established equitable rules and principles. Hill v. Villarreal, supra. We have reviewed the record in this case and cannot say that the trial court abused its discretion in refusing to enjoin the proposed operation of the oval race track.

■ Appellant urges in the alternative that the judgment should be modified to restrict appellees' operation to the specific times which appellees by their pleadings and testimony proposed to operate the track. By supplemental brief appellant suggests that appellees are already operating a winter season contrary to their previous intentions. It is seen that this case involved only a proposed operation and therefore evidence was not heard concerning the actual operation. The trial court has the authority to hear evidence to modify the judgment if appellees' actual operation should justify a modification. The trial court is the proper forum to hear evidence of such justification.

Appellees make no complaint of the judgment, and therefore their cross-points are immaterial and not considered.

The judgment is affirmed.