458

## Weishner v. Washington County Golf and Country Club

*Dennis J. Stefanik* and *Benjamin L. Costello,* for plaintiffs.

*George B. Stegenga,* for defendant.

GLADDEN, *J.,* April 3, 1979—This matter is before the court on a complaint in equity filed by plaintiffs who seek a permanent injunction to prevent defendant from allowing its members and patrons to use its golf course as it is presently situated on the property.

· · ·

### DISCUSSION

Plaintiffs are seeking abatement of a private nuisance. Private nuisance has been defined as a nontrespassory invasion of another's interest in the private use and enjoyment of land: Restatement, 2d, Torts, §821D. The right to the free use of property is subject to the implied obligation of an owner

or occupant to use it in such a way that it will not be unreasonably injurious to the enjoyment of other property owners: 28 P.L.E. §3, 144.

The issue before the court is whether or not the court should enjoin defendant's operation of the number one tee on its golf course. The law concerning the issuance of an injunction to abate a nuisance is stated in Dexter v. Bebenek, 458 Pa. 1, 327 A. 2d 38 (1974). There the court said: "It is undisputed that equity may enjoin an otherwise lawful business when its operation is so unreasonable as to constitute a nuisance . . . In all cases, the appropriateness of a particular form of relief is to be tested by balancing the seriousness of the injury against the cost of avoiding it and the importance of the conduct causing it."

We are not convinced that defendant has made use of its property in an unreasonable way. For more than 60 years its members have used number one tee to approach number one green. Evidence shows nothing more than the normal use of premises constructed and designed as a golf course. Defendant has not expanded its facility, and there is no evidence of a prospective expanded use. In fact, the contrary is true, since it is established that defendant's membership is on the decline. It is common knowledge that building sites adjacent golf fairways are highly prized as well as highly priced real estate. Modern cluster housing has sprung up along golf courses, and the juxtaposition has proven highly rewarding to developers. We have only to look at recent litigation in this court where a new borough was created largely dominated by a golf course with a proposed series of housing units dotted amid the fairways. (In re Borough of Green Hills.)

Since plaintiffs have testified that the use of their property is curtailed by the danger of golf balls being sliced onto the premises, they have proposed an alternative to avoid future trespass. This alternative, in our opinion, would prove very costly under the circumstances. Their expert, Xenophon George Hassenplug, suggests redesigning number one fairway so as to provide a "dog leg" approach to number one green. This redesign by Hassenplug's own estimate would cost in the neighborhood of $10,000 to $15,000. From the record it would appear that Hassenplug did not take into consideration what effect his proposal would have on other adjacent fairways and the expense that may be entailed in redesign and reconstruction of the entire course. From this evidence we find the use defendant has made of its land to be reasonable, and we find plaintiffs' proposal to avoid the injury to be unreasonable as to redesign and cost. Further, we find that the holding in Guarina v. Bogart, 407 Pa. 307, 180 A. 2d 557 (1962), cited by plaintiffs, is distinguishable. In Guarina, the court found an injunction to be the appropriate remedy to force the owner of a drive-in theater to install individual speakers at a cost of $350 to $500 and eliminate the single speaker that broadcast the soundtrack not only to the theater patrons but to the inhabitants of the surrounding countryside. The cost in Guarina was reasonable when balanced against the nuisance sought to be avoided, and, additionally, the court took into account the accepted modern technology of the drive-in movie industry.

We read Guarina to stand for the proposition that when deciding the duty a land owner has to abate a private nuisance, reasonable cost is a considera-

tion. Having accepted that proposition, we find it inapplicable to the facts herein.

Finally, we consider the fact that plaintiffs by the purchase of their plot of ground in its present location have "come to the nuisance" which they now seek to enjoin. Obviously when plaintiffs purchased their land in 1977, they were aware of the existence and location of the golf course. As reasonable people they realized, or should have realized, the potential hazard of locating a house in such close proximity to a golf course. During excavation they found evidence that would warn them of what they might expect with reference to golf balls landing on their property. The fact that defendant is making reasonable and normal use of its premises and that plaintiffs voluntarily chose to purchase adjoining property without making responsible inquiry as to probable or potential hazard must work against plaintiffs. Also, we must consider the fact that no other homeowners in the vicinity have complained of the activities of defendant's members, nor have they testified on plaintiff's behalf.

Testimony convinces us that defendant is making a positive effort to reduce any hazard to plaintiffs' peaceful enjoyment of their property. Construction has begun to relocate number one tee approximately 30 yards to the east of its present location. This is being done for the express purpose of accommodating plaintiffs. In addition, defendant has made plans to plant a natural screen of trees and shrubs along its common boundary with plaintiffs. Plaintiffs would be well advised to supplement that screening with additional planting of their own.

With the implementation of these changes, plaintiffs and defendant should each find enjoyment in the use of their land.

. . .

### DECREE NISI

And now, April 3, 1979, plaintiffs' complaint in equity seeking injunctive relief is dismissed.

The prothonotary is directed to enter this decree as a decree nisi, and to give immediate notice of the decree as required by the equity rules. Unless exceptions are filed thereto within 10 days from the entry of this decree nisi, the same shall be entered as a decree absolute, as provided.