D. PRIEST and Van Zandt Commission Company, Inc., Appellants,

v.

TEXAS ANIMAL HEALTH COMMISSION, Appellee.

No. 05–88–01417–CV.

Court of Appeals of Texas, Dallas.

Nov. 6, 1989.

☞186

Mark J. Calabria, Rebecca L. Calabria, Kaufman, for appellants.

Molly D. Shannon, Austin, for appellee.

Before HOWELL, THOMAS and OVARD, JJ.

## OPINION

THOMAS, Justice.

D. Priest and Van Zandt Commission Company (hereafter collectively "Priest") appeal from a permanent injunction entered by summary judgment, enjoining Priest from: 1) failing to maintain proper cattle ownership records for cattle sold through them; 2) refusing to allow Texas Animal Health Commission (hereafter "Commission") representatives to examine such records; and 3) failing to brand cattle exposed to brucellosis. In two points of error, Priest contends that the trial court erred in granting the Commission's motion for summary judgment because: 1) the summary judgment evidence did not entitle the Commission to judgment as a matter of law and did not establish that there were no genuine issues of material fact; and 2) the affidavits and attachments to the Commission's motion for summary judgment were inadequate as a matter of law to establish that no material issue of fact existed. We agree that the proof failed to establish that Priest failed to keep records as required by law. We conclude, however, that the other grounds for injunction were properly established. Thus, the trial court's judgment is affirmed in part and reversed and remanded in part.

## STANDARDS OF REVIEW

### A. *Permanent Injunction*

A successful applicant for injunctive relief must demonstrate the following four grounds for relief: 1) the existence of a wrongful act; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex.App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex.1983).

The grant or refusal of a permanent or temporary injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Janus Films Inc. v.*

*City of Fort Worth*, 163 Tex. 616, 617, 358 S.W.2d 589, 589 (1962) (temporary injunction); *Mejerle v. Brookhollow Office Products*, 666 S.W.2d 192, 193 (Tex.App.—Dallas 1983, no writ) (temporary injunction); *Electronic Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex.Civ.App.—Dallas 1974, no writ) (temporary injunction, but suggesting that abuse of discretion standard applies to all injunctions); *Lee v. Bowles*, 397 S.W.2d 923, 926 (Tex.Civ.App.—San Antonio 1965, no writ) (permanent injunction). Where the facts conclusively show a party is violating the substantive law it becomes the duty of the court to enjoin the violation and in such case there is no discretion to be exercised. *City of Houston v. Memorial Bend Util. Co.*, 331 S.W.2d 418, 422 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.).

■ Although a litigant has the right to a trial by jury in an injunction action, only ultimate issues of fact are submitted for jury determination. *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex.1979). The jury does not determine the expediency, necessity or propriety of equitable relief. *Id.; Alamo Title Co. v. San Antonio Bar Ass'n*, 360 S.W.2d 814, 816 (Tex.Civ. App.—Waco 1962, writ ref'd n.r.e.). As the supreme court has noted:

> We do not consider the question of likelihood of [defendant's] resumption or continuation of the acts enjoined as being an ultimate issue of fact for the jury.... A jury in equity, even under a blended system, does not decide the issue of expediency, necessity or propriety of equitable relief.... It was an element deducible from the circumstances for the court to consider in determining whether wrong or injury might be anticipated and whether chancery powers should be exercised. It constituted here, in effect, a mixed question of law and fact at most. Such questions are not for the jury in injunction cases.

*Texas Pet Foods*, 591 S.W.2d at 803, *quoting Alamo Title Co.*, 360 S.W.2d at 816.

B. *Summary Judgment*

■ The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). Under rule 166a of the Texas Rules of Civil Procedure, summary judgment may be rendered only if the pleadings, depositions, admissions, interrogatory answers, and affidavits show 1) that there is no genuine issue as to any material fact *and* 2) that the moving party is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c).

The applicable standards for reviewing a summary judment may be summarized as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). With the standards of review for injunction and for summary judgment in mind, we turn to the summary judgment proof offered in support of Priest's violations of the Texas Agriculture Code.

### FAILURE TO KEEP PROPER RECORDS

■ The Texas Agriculture Code requires that each livestock auction commission merchant keep a record of transportation of livestock to and from the place of sale, including the name and address of the original owner and the purchaser of the livestock. TEX.AGRIC.CODE ANN. § 147.042 (Vernon 1982). The statute provides that the commission merchant shall retain the records for at least one year after the date of sale. *Id.* § 147.042(d).

The Commission also points to section 147.041 of the Texas Agriculture Code and to rule 35.2(e) of the Texas Bovine Brucellosis Regulations promulgated by the Commission pursuant to sections 161.046 and 163.061 of the Texas Agriculture Code, as requiring Priest to keep records of the names and addresses of sellers and purchasers of cattle. Section 147.041 requires Priest to keep records of all livestock sold. TEX.AGRIC.CODE ANN. § 147.041(a). It does not explicitly state that Priest must keep records including the name and address of sellers and purchasers of livestock, although the statute requires him to file with the commissioners court a quarterly report containing this information. TEX.AGRIC.CODE ANN. § 147.041(c). Because the statute does not specifically require Priest to keep the information the Commission contends he failed to keep, we conclude that violation of this provision will not support the injunction. Rule 35.2(e) provides that the market will supply certain information to the veterinarian making a market test of cattle, including the full name and address, including zip code, of the owner of the cattle at the time the cattle are delivered to the market. Again, although the rule certainly implies a requirement to keep records in order to supply the information to the veterinarian, there is no explicit requirement that Priest keep such records. The Commission has not alleged that Priest failed to give the required information to the veterinarian. Thus, violation of rule 35.2(e) will not support the injunction.

As proof that Priest failed to keep records including the name and address of the original owner and the purchaser, the Commission attached to its motion for summary judgment Priest's answers to interrogatories, an affidavit of Wayne Rogers, a postmaster, and excerpts from the United States Government Manual pertaining to mail. The Commission served on Priest two sets of interrogatories. The sixty questions in the two sets each asked Priest to: "Provide full name, address including county and telephone number for seller/original owner of [certain cattle identified by back tag number] sold through Van Zandt Commission Company, Inc. on [a certain date]." The dates of sales were between January 4, 1986 and December 20, 1986. Priest's answers to the interrogatories were served on counsel on June 17, 1988. Priest's responses to a number of the interrogatories included name, address including route number and box number or street address, city and state, and zip code. Several interrogatory answers included a name and route number, city and state, but did not include a box number and zip code. Others included a name, city and state, or merely a name. In response to one interrogatory asking for the name and address of the seller/original owner of back tag # 74 493 sold through Van Zandt Commission Company on November 22, 1986, Priest responded, "Information not available." The affidavit of the postmaster and the excerpts from the Government Manual concerning the elements of a proper address were offered to show that the information provided by Priest did not, in many respects, constitute full names and addresses.

The Commission's theory for summary judgment was that Priest's inability to produce names and addresses for his responses to the interrogatories was proof that, as a matter of law, Priest did not keep the records required by the Agriculture Code. The hypothesis is compelling, except for one failing. The Agriculture Code required Priest to retain records from sales for only one year. TEX.AGRIC.CODE ANN. § 147.042(d). The fact that Priest could not produce information on June 17, 1988, concerning sales in 1986, constitutes no proof that Priest failed to keep the records of sale for one year as required by the Code. In fact, Priest stated in his affidavit that he has always maintained the proper records. Such statements of the nonmovant must be taken as true. *Nixon*, 690 S.W.2d at 548.

■ We recognize that Priest did not raise this precise argument in his response to summary judgment, nor in his brief on appeal. We note, however, that this point concerns a deficiency of proof that Priest is entitled to raise without first complaining

in his response to the motion for summary judgment. No response from the nonmovant is required when the movant's summary judgment proof is legally insufficient. *Cove Investments, Inc. v. Manges,* 602 S.W.2d 512, 514 (Tex.1980). Further, Priest's points of error aver generally that the trial court erred in granting the summary judgment because the Commission failed to prove its entitlement to such judgment. These points embrace all reasons for the failure of proof which rendered the granting of the summary judgment improper. *Id.* at 517. We hold that the summary judgment proof failed to establish the Commission's entitlement to summary judgment on the basis of a failure by Priest to maintain proper records. Without proof of unlawful conduct or proof of intent to commit such conduct, injunctive relief is improper. *Frey,* 632 S.W.2d at 881. We sustain that portion of point of error one contending that the Commission failed to establish its right to judgment on the ground of failure to keep proper records.

## REFUSAL OF ACCESS TO RECORDS

■ Section 147.042 of the Texas Agriculture Code provides that the commission merchant shall prepare the transportation records referenced above and make them available for public inspection within twenty-four hours after receipt of the livestock and that these records are to be retained for at least one year after the date of sale. TEX.AGRIC.CODE ANN. § 147.042. The Commission contended that Priest had refused to allow Commission representatives to examine these records. As proof, the Commission offered the affidavit of Richard Hanson, Animal Health Inspector. Hanson averred that on several occasions in the exercise of his official duties he had attempted to examine the records of the Van Zandt Commission Company and was told by Priest or his wife, who acted as bookkeeper for the company, that he would not be allowed to view any of the records unless he brought a search warrant. He lists several dates upon which he was refused access to the records, such dates being within one year of sales referenced in the interrogatories.

Priest argues that Hanson's affidavit will not support summary judgment because Hanson is an interested witness. Rule 166a of the Texas Rules of Civil Procedure provides that a summary judgment may be based on uncontroverted evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R.CIV.P. 166a(c); *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986). We conclude that the statements in Hanson's affidavit that on several listed dates he was refused access to records by Priest and his wife are clear, positive, direct and could have been readily controverted. Further, this evidence was not controverted by Priest. Thus, the summary judgment could be based upon Hanson's affidavit. Hanson clearly stated that he was not allowed to view records which the Agriculture Code required Priest to retain and make available for public inspection. We hold that this evidence established the Commission's entitlement to summary judgment on this ground as a matter of law.

## FAILURE TO BRAND CATTLE EXPOSED TO BRUCELLOSIS

The Texas Bovine Brucellosis Regulations require cattle infected with brucellosis and cattle exposed to infected cattle to be appropriately branded. Cattle identified as being infected with brucellosis are branded on the left jaw with the letter "B." Cattle from the same herd as any infected cattle are considered suspects, and are to be branded on the left jaw with the letter "S." Tex. Animal Health Comm'n, 4 TEX. ADMIN.CODE § 35.2(h) (West Oct. 15, 1988) (brucellosis). All exposed cattle are to be branded prior to moving, except that cattle on the premise of origin may be moved to a livestock market where they are to be indentified by "S" brand upon arrival. *Id.* § 35.2(h)(2).

As proof that Priest had moved suspect cattle without first "S" branding them, the Commission offered the affidavits of Rick Nabors, director of the State–Federal lab-

oratories in Texas, and veterinarian Edward L. Ptacek. In addition, Nabors's affidavit was accompanied by documents reflecting the results of brucellosis tests of cattle passing through the Van Zandt market. Nabors stated that he is a microbiologist and that the attached documents correctly reflect that brucellosis tests were conducted on blood samples received from a herd of cattle owned by the Malouf Ranch. The test results on two animals, identified by backtag numbers, were positive. Nabors averred further, "Based on the card test, the veterinarian classified both animals as reactors [infected with brucellosis]. The State–Federal laboratory tests confirm his results." Edward Ptacek stated that he had been employed by the Commission as the director of Area 5; the area in which the Van Zandt Commission Company conducted business. On a certain date, he personally observed seventy-three head of cattle from the Malouf Ranch, which herd contained two brucellosis-infected animals, being moved without proper "S" branding as required for the seventy-one exposed cattle.

Priest argues that Nabors's affidavit and attachments do not support the summary judgment because the affidavit contains hearsay, is not based upon personal knowledge, and fails to establish the admissibility of the attachment. Priest's hearsay complaint is directed to the statement that "the veterinarian classified both animals as reactors." We agree that such statement is inadmissible hearsay, properly objected to in Priest's response to the motion for summary judgment, and should be disregarded. Priest further contends that this hearsay statement shows that Nabors's affidavit is not based on personal knowledge, but rather upon the statement of some unknown veterinarian. We disagree. The affidavit states that Nabors confirmed this statement from his own laboratory tests. Priest also argues that the documents attached to Nabors's affidavit are inadmissible because the documents are not directly referenced or identified in the affidavit, the affidavit does not reflect whether the attachments are true and correct copies of the originals, and the affidavit does not establish the admissibility of the documents.

■ Priest is mistaken in stating that the affidavit does not refer to the documents. The affidavit clearly states, "The attached documents correctly reflect ..."; thus, the affidavit does directly reference the documents. Priest's argument that the affidavit fails to state that the copies are true and correct copies is more troublesome. Priest correctly states that such words are not used. Rule 166a states that attachments referred to in an affidavit shall be sworn or certified copies. TEX.R. CIV.P. 166a(e). Documents which are not sworn to or certified in any way do not constitute summary judgment proof. *Lopez v. Hink*, 757 S.W.2d 449, 450 (Tex.App.—Houston [14th Dist.] 1988, no writ).

■ The supreme court has held, however, that copies of documents which are attached to a *properly prepared affidavit* are sworn copies within the meaning of rule 166a. *Schindler*, 717 S.W.2d at 607; *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983). An affidavit which avers that the documents are true and correct copies is considered a properly prepared affidavit. *Schindler*, 717 S.W.2d at 607. *Schindler* does not, however, limit a properly prepared affidavit to one containing these magic words. We hold that Nabors's statement that the documents accurately reflect the results of tests performed by the laboratory he supervises properly verified the documents.

■ Priest's last complaint directed to Nabors's affidavit and attached documents is that the affidavit fails to establish the admissibility of the attachments "with respect to who made the document, when they were prepared or whether or not they were business records." Priest does not aid us with citation to authority; nevertheless, we discern that his complaint is that the documents were hearsay in that they were not shown to be admissible business records. Priest raises this complaint for the first time on appeal. Because he failed to raise this hearsay objection in his response to the motion for summary judgment, he has waived any complaint as to

consideration of inadmissible evidence as part of the summary judgment record. *Dolenz v. A.B.*, 742 S.W.2d 82, 83–84 n. 2 (Tex.App.—Dallas 1987, writ denied).

Priest attacks Ptacek's affidavit because the witness references "the foregoing test records," an apparent reference to the documents attached to Nabors's affidavit, which preceded Ptacek's affidavit when presented to the court. Priest again complains that the documents were not properly sworn. We reiterate that Nabors's affidavit properly verified the exhibit. Priest further complains that the referenced document was not attached to Ptacek's affidavit. Rule 166a(e) provides that sworn copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or *served therewith*. Priest does not contend that the documents attached to Nabors's affidavit were not served together with Ptacek's affidavit when the Commission's motion for summary judgment was served.

■ Having determined what parts of the summary judgment proof may be considered, we turn now to the sufficiency of that proof. Nabors stated that two animals from the Malouf herd tested positive for brucellosis, and were therefore considered reactors. The test results show that the test was conducted at Priest's facility. Further, Ptacek stated that he personally observed, at the Van Zandt Commission Company, suspect cattle that were moved without first being branded "S".

We conclude that the summary judgment proof showed that Priest had moved suspect cattle without first branding the cattle with the letter "S" as required by the Texas Bovine Brucellosis Regulations promulgated by the Commission. Thus, the Commission established its entitlement to summary judgment on this ground as a matter of law.

### SUMMARY

We hold that the trial court properly granted the summary judgment concluding that Priest had refused to allow Commission representatives to examine records and that Priest had allowed suspect cattle to be moved without first branding them as required by state regulations. We also conclude that the trial court did not abuse its discretion in entering the permanent injunction on these grounds. We further hold that the evidence failed to show that, as a matter of law, Priest failed to keep records as required by law. Thus, we conclude that the trial court abused its discretion in entering the injunction on this ground. We reverse the summary judgment on this ground and remand for further proceedings. In addition, the permanent injunction enjoining Priest from failing to maintain proper records is dissolved.

HOWELL, J., dissents.

HOWELL, Justice, dissenting.

I dissent. The majority opinion will not stand up to close analysis.

(1) The majority concludes by affirming on grounds that "the trial court did not abuse its discretion." The wrong test has been applied. Summary judgment will not lie unless the movant shows his entitlement thereto *as a matter of law*. It is error to award an injunction through the summary judgment process unless the movant's proof is such that the trial court is wholly without discretion. Only where the summary judgment evidence is such that it demonstrates that the denial of relief would be a clear abuse of discretion may a permanent injunction be entered in response to a motion for summary judgment. Otherwise, as in the case at hand, the movant has not met his burden to show that he is entitled to recover, as a matter of law.

(2) At the outset, the majority recites a four-fold test that the movant must satisfy in order to obtain a permanent injunction. This dissent will assume for the time being that the State sufficiently proved the existence of unlawful conduct. However, the record is bereft of any showing upon the other three elements, imminent harm, irreparable injury, and no adequate remedy at law. After firmly declaring that such a showing is required, the majority has no comment on the State's failure to make a showing upon the three latter elements

which it has held (and correctly so) to be necessary.

(3) The majority declares that injunction is a discretionary remedy and declares that appellate review is "limited to the question whether the action constituted a clear abuse of discretion." However, all of the cases cited involved the issuance of an injunction following a trial on the merits. As already stated, in order to fulfill the summary judgment requirement that the movant show himself entitled to judgment "as a matter of law," the movant must have demonstrated to the trial court that it was without discretion to deny the injunction.[1]

It is rare that a plaintiff by motion for summary judgment is able to meet, as a matter of law, the rigorous demands of the equity which must be satisfied before an injunction may issue. Equitable relief is discretionary relief. The trial court must engage in a balancing of the equities. In the ordinary instance, the applicant must plead and prove that he has no adequate remedy at law. Equity will not, in the ordinary instance, engage in the enforcement of the criminal law. It is further well established that he who seeks equity must do equity, that equity aids the vigilant, that equity will not do a vain or useless thing, and that equity only exacts restitution, never vengeance.

The plaintiff Commission appears to rely on two statutes for exemption from the principles of equity ordinarily applicable in cases such as this. Neither statute expressly entitles state officials or state agencies to equitable relief except in compliance with the rules of general application. It is a well established principle that the state, its agencies, and its officials enter court and litigate on the same basis and subject to the same requirements of law as private individuals. We should be very slow to read into the statutes in question any special provisions in favor of the Commission.

The first of the statutes invoked is, by far, the most specific in its application. Section 161.131 of the Texas Agriculture Code provides that "any citizen" may sue to enjoin violations of "this chapter." TEX. AGRIC.CODE ANN. § 161.131(a) (Vernon 1982). However, it is doubtful if that statute has any application because it expressly exempts subchapter G, being sections 161.111 through 161.116 entitled "Regulation of Livestock Markets." It appears that the violations found by the majority simply do not fall within the injunction provision of the code.

Seemingly, the Commission would sidestep this problem by arguing that it seeks to enjoin violations of its rules (which do little or nothing more than parrot the provisions of the statutes) rather than violations of the statute pertaining to "Livestock Markets." *Id.* §§ 161.111–161.116. However, it is well settled that an administrative agency has no power to adopt rules that defeat the plain meaning of statutes.

When we search for the rule-making authority of the Commission, we find that the statutes contain several grants to the Commission of authority to promulgate rules. First of all, the exempted subchapter contains rule-making authority. *Id.* §§ 161.111—161.116. However, if there is no authority to enforce the statute by injunction, there can be no authority to enforce by injunction the rule-making authority contained in the same statute. After all, water can rise no higher than its source.

1. The majority states that "where the facts conclusively show a party is violating the substantive law it becomes the duty of the court to enjoin the violation," citing *City of Houston v. Memorial Bend Util. Co.*, 331 S.W.2d 418, 422 (Tex.Civ.App.—Houston [1st Dist.] 1960, writ ref'd n.r.e.). However, a reading of *Memorial Bend* reveals that its declaration was far too broad. In that case, a utility company unilaterally increased its monthly rates in violation of a valid city ordinance. The defendant utility gave every indication that it intended to continue charging its unlawful rates unless restrained. The appellate court, finding the ordinance valid, held that the trial court committed a clear abuse of discretion in refusing a temporary injunction. Laying aside the fact the *Memorial Bend* only involved a temporary injunction, there are many differences from the case at hand, particularly with respect to proof that the defendant's unlawful conduct would continue unless enjoined and the lack of a showing of irreparable injury.

Other parts of the same chapter describe the powers and duties of the Commission, and contain additional provisions authorizing entry and granting rule making power. There are also provisions outside of the exempted subchapter relating to the inspection, treatment, quarantine, and sale or marketing of diseased animals.

Another chapter of the Code, entitled "Livestock Commission Merchants," contains, among other things, record-keeping and inspection provisions. *Id.* §§ 147.001–147.065 (Vernon 1982 & Vernon Supp.1989). Still another chapter entitled "Brucellosis Control Areas," sections 163.001 through 163.087, contains further provisions relating to rule-making, entry, reports, testing, branding, and handling of diseased animals. *Id.* §§ 163.001–163.087 (Vernon 1982 & Vernon Supp.1989).

The Commission would apparently argue that the rules upon which it relies were not promulgated under authority of section 161.112, a portion of "this chapter" to which the injunction provision is expressly inapplicable. Presumably, the argument is that the rules were adopted under authorizations found elsewhere from sections 161.-111 through 161.116 and that the rules are therefore not affected by the no-injunction proviso of section 161.131(a).

The easy answer to this argument is that *the specific controls over the general.* Inasmuch as the statutory scheme expressly makes the injunction provision inapplicable to "Livestock Markets" and to the rule making authority pertaining to "Livestock Markets," we must hold that the Commission may not subvert the clear statutory command through the adoption of rules pertaining to "Livestock Markets" on the basis of generalized rule-making authority contained elsewhere in the Code. Any other construction operates to nullify a clear declaration of legislative intent. TEX.AGRIC. CODE ANN. § 161.131(a) (Vernon 1982).

The other statutory authorization for injunctive relief upon which the Commission would rely is contained in the Administrative Procedure and Texas Register Act. TEX.REV.CIV.STAT.ANN. art. 6252–13a, § 19A (Vernon Supp.1989). This statute has such broad and general application that we must be slow indeed to import into it any special prerogatives on the part of the State, its officials, and its agencies to obtain injunctive relief. We must hold that this latter statute is no more than a general statement of principle that the State, its agencies, and its employees may obtain injunctive relief wherever the usages of equity forged out over the centuries make injunctive relief available and appropriate.

The foregoing analysis cannot, by any means, be interpreted as a holding that the statutes just discussed preclude the Commission from injunctive relief. Sections 65.001 through 65.031 of the Texas Civil Practice and Remedies Code generally regulate the availability of injunction for all litigants. TEX.CIV.PRAC. & REM.CODE ANN. §§ 65.001–65.031 (Vernon 1986); *see also* TEX.R.CIV.P. 693. This analysis of the injunction statutes returns to the point from which it departed. *No,* this defendant and its operations as a livestock commission market are not wholly exempt from being forced through the issuance of an injunction to comply with the Agriculture Code. *Yes,* the writ is available on suit by the Commission. However, the Commission enters the courts of this State on the same basis as any other litigant, being neither more entitled nor less entitled to injunctive relief than any other citizen.

One reservation must be made to the foregoing statement. A state official or agency cannot be held to the exacting standard of irreparable injury to which a private litigant is generally held. Where a public official is expressly charged with the enforcement of a regulatory scheme, if we were to hold that he must show irreparable injury to himself, to state property or to the state treasury, we would obviously be effectively denying the State, and those through whom it must act, of injunctive relief in virtually all cases. The irreparable injury requirement is satisfied on behalf of the State when it shows the threat of clear, immediate and substantial injury, of an irreparable nature, to the protected class or to a specific group through violation of the regulatory provision which the

State officer or agency is charged by law to enforce. Thus, the irreparable injury requirement was satisfied in the case of *Gluck v. Texas Animal Health Comm'n*, 501 S.W.2d 412, 415 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). In that case, the landowner refused to allow his cattle to be tested for brucellosis. The trial court issued an injunction via motion for summary judgment. The appellate court affirmed: "[I]rreparable harm would be threatened to the cattle industry of Frio County if appellant cannot be compelled to comply with the statute." An outbreak of the disease was then manifest in the area and all herds were being mandatorily tested. In order to control the spread of the infection, immediate and widespread testing was imperative. The irreparable injury requirement was satisfied. *Id.*

Having outlined the principles upon which this case should be decided, this dissent turns to the specifics. Our majority has found that the defendant committed two violations of the Agriculture Code. On several occasions, defendant refused to allow inspection of his records by Commission personnel. Proof that the infraction occurred and that it was repeated does not necessarily prove irreparable injury. In fact there was no showing that defendant was attempting to hide the fact that he was engaged in the practice of dealing in diseased cattle, if such be the real contention of the plaintiff Commission. By his affidavit, defendant has offered the following explanation of his conduct:

I have previously understood from other livestock barn owners that they were sued by animal owners for revealing or producing records. I now understand that such records are public in nature and must be produced at all times upon request.... I have no intention of violating the laws of the State of Texas in the future.

By its summary judgment, the trial court has deprived defendant of the opportunity to present his testimony in person to the trier of fact. Had the trier of fact believed that defendant was sincere and credible, had the trier of fact decided that no harm was done, had the trier of fact decided that future violations were unlikely, did the trier of fact possess the discretion, after the plenary hearing, to deny injunctive relief to the Commission? Of course, he did. By the same measure, it was error to enter a summary judgment in this case. It is not the office of summary judgment to substitute trial by affidavit for trial upon the merits with live witnesses for both sides. The office of summary judgment is limited to the elimination of patently unmeritorious claims.

The other violation found against defendant was that a herd containing two diseased animals passed through defendant's premises without being branded in accordance with the rules and statutes. However, unlike *Gluck*, the cattle in question had gone far from defendant's premises when summary judgment was rendered. Our trial court could do naught but enjoin future conduct of a similar nature. However, there was no claim of any continued pattern of activity, no claim that defendant routinely allowed diseased cattle to be sold through his premises, or even that defendant or anyone in authority at defendant's premises knew that the cattle in question were either subject to the disease or that they had not been branded as suspects.

It is not to be doubted that the statute imposes affirmative duties on a livestock market operator. He has the affirmative duty to see to it that diseased cattle are not sold through his premises in violation of the law. However, in the absence of some showing of dereliction of duty, in the absence of some showing of the threat of future violations of the same sort, the trial court after hearing the evidence in full must deny injunctive relief upon this count. The Commission has not made prima facie proof of its entitlement to an injunction simply by proving one single past incident and offering no evidence of culpability and no evidence of any likelihood of recurrence.

Injunction is a harsh remedy and must be carefully regulated and confined to proper cases. *Raine v. Searles*, 302 S.W.2d 486, 487 (Tex.Civ.App.—El Paso 1957, no writ). Injunctions are issued only to prevent im-

minent harm. *Lloyd v. Alaska Worldwide, Inc.*, 550 S.W.2d 343, 348 (Tex.Civ.App.—Dallas 1977, no writ). In the absence of a showing that the acts complained of probably will occur again, acts occurring prior to the suit will not furnish a basis for injunctive relief. *Edgar v. Glenn W. Turner Enterprises*, 487 S.W.2d 847, 849 (Tex.Civ.App.—Austin 1972, no writ); *see Knopf v. Standard Fixtures Co.*, 581 S.W.2d 504, 506 (Tex.Civ.App.—Dallas 1979, no writ); *Burklund v. Hackett*, 575 S.W.2d 389, 392 (Tex.Civ.App.—Tyler 1978, no writ). The purpose of injunctive relief is to halt wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the commission of wrongs not imminently threatened. *Texas Employment Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex.Civ.App.—El Paso 1976, no writ).

At the trial upon the merits, the Commission will further be burdened to present evidence that it has no adequate remedy at law. A corollary to this rule provides that the remedy of injunction is not available to prevent violations of the criminal law. Each of the infractions for which defendant has been enjoined is punishable as a misdemeanor. In addition, sections 147.021 through 147.029 of the Agriculture Code require defendant to provide a bond. Suit on the bond is an available recourse with respect to some, if not all, of the infractions here alleged. TEX.AGRIC.CODE ANN. §§ 147.021–147.029 (Vernon 1982). The Commission has asked for and received injunctive relief without a showing that it ever sought these statutory remedies or why they would not be effectual. Without such a showing, the Commission is not entitled to injunctive relief.

*Gluck* does not hold to the contrary. The real thrust of *Gluck* is that the immediacy of the situation—the ongoing spread of an epidemic—required relief that the criminal law could not expeditiously provide. If *Gluck* made any broader ruling, it should be disavowed. If the Commission desires to bypass the remedies set forth on the face of the statute, it must explain its reasons for doing so. Without an adequate explanation, injunction must be denied.

Again, the objective of equity is restitution, not vengeance. For the refusal to allow the inspection of records upon request, as required by law, a fine is a singularly appropriate remedy. Why did the Commission forgo such a plain and apparently adequate remedy? The record is entirely silent. Likewise, isolated instances of misbranding can be addressed by the criminal law. Until and unless the Commission adequately explains its failure to seek these remedies, injunction must be denied.

I therefore dissent. For the reasons given, this case must be reversed and remanded for trial upon its merits.