UIL 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-108-CV





UNIVERSITY INTERSCHOLASTIC LEAGUE AND BAILEY MARSHALL,



 APPELLANTS


vs.





BRUCE LAFEYETTE BUCHANAN, ET AL.,



 APPELLEES


 




NO. 3-92-161-CV





UNIVERSITY INTERSCHOLASTIC LEAGUE AND DR. BAILEY MARSHALL, 



 APPELLANTS


vs.





PHILLIP EARL BOMAR, JR., ET AL.,



 APPELLEES



 



FROM THE DISTRICT COURTS OF TRAVIS COUNTY, 331ST, 53RD JUDICIAL DISTRICTS



NOS. 91-12697, 91-14524, HONORABLE B. B. SCHRAUB, JUDGE PRESIDING


 





 The University Interscholastic League and its Executive Director, Bailey Marshall,
(collectively hereinafter the "UIL") appeal the judgment of the trial court granting a permanent
injunction against the enforcement of the UIL's over-19 rule. (1) We will affirm the judgment of
the district court.



FACTUAL BACKGROUND


 Composed of representatives of Texas school districts, the UIL is a voluntary
organization that regulates, among other things, the competitive athletics of the junior and senior
high school student athletes in Texas. This case involves a challenge to section 400(a) of the UIL
Constitution and Contest Rules (the "over-19 rule") which states: "Subject to the other sections
of this subchapter, an individual is eligible to participate in a League varsity contest as a
representative of a participant school if that individual . . . is less than 19 years old on September
1 preceding the contest . . . ." 

 The UIL states that the underlying purpose of the over-19 rule is to ensure the
safety of the participating student athletes and the equality of competitors. It argues that one
policy justification for the over-19 rule is the avoidance of potential injury which might result if
younger, less developed high school students are required to compete against older students. 
Furthermore, the UIL argues that the over-19 rule discourages the practice of "redshirting," i.e.,
having students repeat grades so that they will be more mature and better athletes during their high
school years. The UIL permits no exception to or waiver of the over-19 rule based on special
circumstances of individual students.

 Appellees, Bruce Buchanan and Phillip Bomar (the "Students"), obtained permanent
injunctions allowing them to participate in the 1991 football season. The final judgments rendered
in these causes stated that the over-19 rule violated Section 504 of the Rehabilitation Act of 1973,
29 U.S.C.A. § 794 (West Supp. 1992) ("Section 504"), as applied to the Students. Section 504
provides in pertinent part:



No otherwise qualified individual with handicaps in the United States, as defined
in section 706(8) of this title, shall, solely by reason of her or his handicap, be
excluded from the participation in, be denied the benefits of, or be subjected to
discrimination under any program or activity receiving Federal financial assistance
. . . .



29 U.S.C.A. § 794.

 The factual bases for the permanent injunctions involving the Students are as
follows.



Bruce Buchanan

 Buchanan turned nineteen years old before he entered the twelfth grade at Travis
High School of the Austin Independent School District ("Austin ISD"). Because he had learning
disabilities, he had repeated the first and seventh grades. During ninth grade, Buchanan began
participating in his school's football program. Although he was nineteen at the start of his senior
year, Buchanan was below the average weight and height of his team members, and he never was
a starter on the team.

 Both Buchanan's mother and his Admission, Review and Dismissal (ARD)
Committee (2) requested a waiver from the over-19 rule. The UIL responded that there were "no
rules which allow for a waiver of the 19-year-old rule." Buchanan instituted this lawsuit against
the UIL and its director, and later joined Austin ISD and Dr. Jim Hensley, the Superintendent of
Austin ISD, as defendants in the suit to enjoin the enforcement of the rule.



Phillip Bomar

 Bomar was also nineteen years of age at the start of his senior year. He had
repeated his fourth and seventh grades, and was classified by his school district, Dallas
Independent School District ("Dallas ISD"), as learning disabled. Like Buchanan, Bomar began
playing football for his high school, Justin F. Kimball High School. Bomar was average in size
compared to the other members of his football team and was a starting linebacker during his junior
year of high school.

 Bomar's mother and high school principal applied for a waiver of the over-19 rule
for Bomar, which the UIL refused. In response, Bomar filed this action against the UIL, its
director, Dallas ISD, and Dr. Marvin Edwards, the Superintendent of Dallas ISD.



CROSS-CLAIMS OF THE SCHOOL DISTRICTS


 Both school districts filed cross-claims against the UIL, stating that the UIL's
mandatory forfeiture rule caused them to violate the rights of the Students. Section
700(a)(2)(C)(ii) of the UIL Constitution and Contest Rules (the UIL's "mandatory forfeiture rule")
provides that if a school allows a student who is finally determined ineligible to participate in a
UIL contest under a court order, the school must forfeit all contests in which the student
participated. In the past, the UIL has enforced the mandatory forfeiture rule to require that a
school forfeit all of its contests in which the litigating student participated even though the
student's participation was pursuant to a lawful court-ordered injunction. (3)

 In October 1991, the trial court issued temporary orders enjoining the enforcement
of the over-19 rule against the Students and the mandatory forfeiture rule against Austin ISD and
Dallas ISD. These two causes were then consolidated for purposes of trial and appeal. After a
trial on the merits, the district court rendered a final judgment in favor of the Students and the
school districts, enjoining the enforcement of the two rules. 

 From this judgment, the UIL appeals bringing forth four points of error.



IMPACT OF THE REHABILITATION ACT ON THE OVER-19 RULE


 In order to obtain injunctive relief, an applicant must establish the existence of a
wrongful act, imminent harm, and irreparable injury, and the absence of an adequate remedy at
law. Hues v. Warren Petroleum Co., 814 S.W.2d 526, 529 (Tex. App.--Houston [14th Dist.]
1991, writ denied); Priest v. Texas Animal Health Comm'n, 780 S.W.2d 874, 875 (Tex.
App.--Dallas 1989, no writ). The decision to grant or deny a permanent injunction lies within the
trial court's sound discretion, and appellate review is restricted to whether the action involved a
clear abuse of discretion. Hues, 814 S.W.2d at 529; Priest, 780 S.W.2d at 875. 

 The UIL argues in its first two points of error that the trial court erred in granting
the permanent injunctions against the over-19 rule and in awarding attorneys' fees. (4) In its first
point of error, the UIL alleges that the rule does not discriminate solely on the basis of the
Students' handicaps; the UIL maintains that the Students are ineligible due to their ages which are
determined by their birth dates. The rule and its purposes, it contends, apply equally to both
handicapped and non-handicapped students.

 We agree that the UIL's enforcement of its over-19 rule as to these Students was
not on the basis of a current handicap or because of a history of being handicapped. However,
the record clearly demonstrates that both Students repeated grades in school because of learning
disabilities. Had they not experienced difficulties in the classroom and progressed through school
at a pace slower than most students, they would have turned nineteen after September 1 of their
senior year and thus would have been age-eligible to participate in interscholastic athletics.

 The United States District Court, in Doe v. Marshall, 459 F. Supp. 1190 (S.D.
Tex. 1978), vacated and remanded on other grounds, 622 F.2d 118 (5th Cir. 1980), cert. denied,
451 U.S. 993 (1981), (5) invoked a balancing test of the harms inflicted upon the various parties in
its determination of whether to grant a preliminary injunction of a UIL rule. Id. at 1192. In the
present cases, evidence demonstrated that the Students would benefit emotionally by participating
in competitive athletics. The evidence did not show that these Students had been involved in
redshirting or that they presented a danger to other student athletes; the concerns that made the
rule necessary are not present in these causes and the UIL is not harmed. Thus, the equities
before the trial court weighed in favor of enjoining the enforcement of the rule.

 The United States Supreme Court has stated that "an otherwise qualified
handicapped individual must be provided with meaningful access to the benefit that the grantee
offers. . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program
or benefit may have to be made." Alexander v. Choate, 469 U.S. 287, 301 (1985) (discussing
Southeastern Community College v. Davis, 442 U.S. 397 (1979)) (emphasis added). Furthermore,
the United States Court of Appeals in Brennan v. Stewart, 834 F.2d 1248, 1262 (5th Cir. 1988),
concluded that "our precedent requires that the 'reasonable accommodation' question be decided
as an issue of fact . . . ." 

 Although the UIL provides a waiver procedure for some eligibility rules, e.g., the
four-year eligibility rule, it fails to furnish such a process for the over-19 rule. Since the UIL
already utilizes a waiver procedure for some rules, the evidence indicates that instituting such a
procedure for the over-19 rule might be a reasonable accommodation in the UIL program to
ensure that handicapped persons achieve meaningful access to the competitions regulated by the
UIL. We find the U.S. District Court's reasoning on this issue in Booth v. University
Interscholastic League, No. A-90-CA-764 (W.D. Tex. Oct. 4, 1990) (case dismissed as moot Jan.
14, 1991), particularly persuasive:



[T]o uphold the [UIL's] blanket policy against consideration of the Plaintiff's
circumstances in this case would be to undermine the objectives of the
Rehabilitation Act without advancing the policies behind the 19 year-old eligibility
rule. There is no evidence before the Court to suggest that the [UIL] bases its
decision to bar the Plaintiff from playing high school football on any particular
harm that might result if he is allowed to play, or on anything other than a policy
of strictly enforcing its rules. But the Rehabilitation Act requires that federally
assisted programs do more for those who fall within its ambit. For these reasons,
requiring the [UIL] to give special consideration to the Plaintiff based on his
history of being handicapped is a reasonable accommodation.



Booth, at 11-12. The Students in these causes are entitled to special consideration by the UIL to
guarantee that the objectives of Section 504 are effectuated. A waiver mechanism for the over-19
rule would permit the UIL to consider the facts of particular situations in order to make
individualized determinations as to the enforcement of the rule. Such determinations are reasonable accommodations which would advance both the purposes of Section 504 and the
policies behind the over-19 rule. Under these factual circumstances, the "no-exception" policy
to the over-19 rule must yield to Section 504's reasonable accommodation requirement established
by the United States Supreme Court in Alexander.

 Accordingly, we hold that the trial court did not abuse its discretion in enjoining
the enforcement of the over-19 rule. Points of error one and two are overruled.



EXHAUSTION OF REMEDIES


 In its third point of error, the UIL alleges that, because the Students did not exhaust
the administrative remedies under the Individuals with Disabilities Education Act (the "IDEA"),
20 U.S.C.A. §§ 1400-1484a (West Supp. 1992), (6) the district court lacked jurisdiction over the
causes. Specifically, it complains that the Students did not comply with section 1415(f) of the
IDEA which states, "before the filing of a civil action under [the Rehabilitation Act and] such laws
seeking relief that is also available under this subchapter, the procedures under subsections (b)(2)
and (c) of this section shall be exhausted to the same extent as would be required had the action
been brought under this subchapter." 20 U.S.C.A. § 1415(f). The applicable remedy under this
statute consists of a due process hearing and subsequent review for any complaint raised by a
handicapped child or its parents regarding the child's education. 20 U.S.C.A. § 1415(b)(2), (c). 
The UIL maintains that the Students did not comply with this prerequisite for civil suits because
they did not request a due process hearing to contest the exclusion of interscholastic athletics from
their IEPs. (7)

 The Students respond that the IDEA and Section 504 are different statutes with
different purposes. They urge that while the IDEA strives to assure that handicapped children
receive appropriate free public education, Section 504 prohibits discrimination against
handicapped persons. See Smith v. Robinson, 468 U.S. 992, 1016 (1984). The Students argue
that their complaint is against the UIL for discrimination on the basis of their handicaps, not
against the school districts for denial of a free appropriate public education; hence, relief was only
available under Section 504. They argue that, because the UIL is not vested with the duty to
provide a free appropriate public education under the IDEA, the Students could not assert their
action against the UIL under the IDEA. The record reflects that the school districts applied to the
UIL for waivers to the rule which the UIL denied. Therefore, the Students and their school
districts acted in accordance with the UIL rules, and the cause of action was governed by Section
504 and not the IDEA. We agree with the Students regarding this exhaustion of remedies point,
and thus we overrule the UIL's third point of error.



MANDATORY FORFEITURE RULE


 In its fourth and final point of error, the UIL contends that the trial court erred in
enjoining the mandatory forfeiture rule and in awarding attorneys' fees. It insists that "the rule
is reasonably related to a legitimate state purpose and is not arbitrary, capricious, or
fundamentally unfair."



Issue of Mootness

 The Students reurge this Court to dismiss the appeal as moot. (8) They argue that
since the 1991 football season has ended and they have graduated, an active controversy no longer
exists. The school districts respond by urging that such action on our part would vacate the trial
court's judgment and would permit the UIL to invoke the sanctions contained in the mandatory
forfeiture rule.

 The mootness doctrine is well established. Appellate courts only determine cases
in which an actual controversy exists. Camarena v. Texas Employment Comm'n, 754 S.W.2d
149, 151 (Tex. 1988); Texas Educ. Agency, 797 S.W.2d at 369. The issue of whether an
injunction is valid becomes moot when the injunction does not continue to have effect. See Parr
v. Stockwell, 322 S.W.2d 615, 616 (Tex. 1959); Texas Educ. Agency, 797 S.W.2d at 369; Spring
Branch I.S.D. v. Reynolds, 764 S.W.2d 16, 18 (Tex. App.--Houston [1st Dist.] 1988, no writ). 
An appellate court must set aside the judgment and dismiss the cause when an appeal is moot. 
Texas Educ. Agency, 797 S.W.2d at 369; Texas Parks & Wildlife Dep't v. Texas Ass'n of Bass
Clubs, 622 S.W.2d 594, 596 (Tex. App.--Austin 1981, writ ref'd n.r.e.).

 Two exceptions to the mootness doctrine currently exist: (1) the "capable of
repetition exception" and (2) the "collateral consequences exception." General Land Office v.
OXY U.S.A., Inc., 789 S.W.2d 569, 571 (Tex. 1990). However, neither exception applies to
these causes. See Spring Branch I.S.D., 764 S.W.2d at 18-19.

 The UIL urges this Court to avoid dismissal by adopting a new exception to the
mootness doctrine, the "public interest exception." According to the UIL, thirty-six states have
recognized the "public interest exception," which allows appellate review of a question of
considerable public importance if that question is capable of repetition between either the same
parties or other members of the public but for some reason evades appellate review. The UIL
points out that other states have applied this doctrine in high school athletic controversies such as
this one.

 In Texas Education Agency, 797 S.W.2d at 369, under similar facts as these, we
determined that the appeal was moot because the football eligibility of the litigating students had
expired. See also Spring Branch I.S.D., 764 S.W.2d at 18. However, these cases are
distinguishable from the instant cause. In neither of those cases was the question of attorneys'
fees involved. (9) Furthermore, in the instant cause, the school districts, which are parties to this
appeal, have a direct interest in the continued viability of the district court judgment to prevent
the UIL from enforcing the mandatory forfeiture rule. See Mahavongsanan v. Hall, 529 F.2d 448
(5th Cir. 1976) (Student brought action to compel university to grant a degree. After injunctive
relief was granted, university awarded degree and appealed the judgment. The Fifth Circuit Court
of Appeals held that the case was not moot because the legal interests of the parties continued to
be adverse.). Therefore, because of these distinguishing facts, we have decided to review the case
pursuant to a "public interest exception" to the mootness doctrine, and adhere to our earlier ruling
overruling the Students' motion to dismiss the appeal as moot.

 Because we elect to review these causes under the "public interest exception" to the
mootness doctrine, and because we affirm the lower court's final judgment that the over-19 rule
violates Section 504 of the Rehabilitation Act, we affirm the district court's ruling that the
Students were eligible to play football during the 1991 season. Therefore, since there is no basis
for the UIL to invoke the mandatory forfeiture rule, we have no need to address its fourth point
of error.



CONCLUSION


 Finding no error, the judgment of the district court is affirmed.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

No. 3-92-108-CV--Affirmed

No. 3-92-161-CV--Affirmed


Filed: February 3, 1993


[Publish]


1.   As a preliminary matter, we address the Students' motion to dismiss this appeal as
moot. For reasons discussed later in this opinion, we decline to dismiss the appeal as
moot.
2.   The ARD Committee is composed of, at a minimum, a school administrator, a
special education teacher, a regular education teacher, and the child's parent. Other
persons may be included in the ARD Committee if determined to be necessary. One of
the functions of the ARD Committee is to develop an individualized educational plan
(IEP) for the student. Buchanan's IEP did not include interscholastic football as part of
his program. Buchanan never petitioned for an administrative appeal of the decision of
the ARD Committee to the Texas Education Agency. Buchanan's mother testified that
because the ARD Committee recommended a waiver from the over-19 rule, she agreed
with its decision, and thus did not feel it was necessary to appeal the decision.
3.   See Texas Educ. Agency v. Dallas Indep. Sch. Dist., 797 S.W.2d 367, 369 (Tex.
App.--Austin 1990, no writ). (This Court held that the appeal in that case was moot, and
therefore the underlying order was vacated. Accordingly, the UIL's determination of
ineligibility became final and triggered the enforcement of the mandatory forfeiture rule).
4.   As a preliminary matter, the UIL contends in its second point of error that the
Students do not meet the definition of "qualified handicapped persons" under section 504
of the Rehabilitation Act. After reviewing the Act and its attendant regulations, we reject
this argument and conclude that both students meet the definition of "qualified
handicapped persons." 
5.   Although not controlling, this Court looks to federal precedent for its persuasive
value.
6.   Among the stated purposes of IDEA are 


to assure that all children with disabilities have available to them, within the
time periods specified in section 1412(2)(B) of this title, a free appropriate
public education which emphasizes special education and related services
designed to meet their unique needs [and] to assure that the rights of
children with disabilities and their parents or guardians are protected . . . .


20 U.S.C.A. § 1400(c).
7. [7]  The UIL admitted in oral argument that had the school districts declared the Students
eligible under the IDEA, the UIL would not have abided by such determination. We also note
that the school districts requested waivers from the UIL of the over-19 rule, and therefore the
Students had no need to invoke an administrative procedure designed to request affirmative
action from the school authorities.
8.   We overruled the Students' original motion to dismiss as moot.
9.   If we moot this appeal and the judgment of the district court is vacated, the
judgment for attorneys' fees is vacated as well.