CITY OF DALLAS, Appellant,

v.

BILLINGSLEY FAMILY LIMITED PARTNERSHIP, Appellee.

No. 05–10–01441–CV.

Court of Appeals of Texas, Dallas.

Jan. 24, 2012.

Barbara E. Rosenberg, Jennifer W. De-Curtis, Melissa A. Miles, James Pinson, Office of City Attorneys, Charles Estee, Dallas, for Appellant.

Israel L. Suster, The Suster Law Group, PLLC, Plano, Byron Kevin Henry, Hilaree A. Casada, Cowles & Thompson, PC, Dallas, for Appellee.

Jeffrey Michael Goldfarb, Goldfarb Branham, LLP, P. Michael Jung, Strasburger & Price, L.L.P., Charles William Branham, III, Branham Law Group, LLP, Dallas, for Amicus Curiae.

## OPINION

Opinion By Justice MORRIS.

The City of Dallas appeals the trial court's judgment that it take nothing on its claim for a permanent injunction. It contends that the Billingsley Family Limited Partnership operates property as a residential hotel in violation of certain zoning ordinances. In two issues, the City challenges the legal and factual sufficiency of the trial court's findings and claims the trial court abused its discretion in denying its request to enjoin Billingsley's use of the property as a residential hotel. Having concluded that the City has failed to demonstrate any reversible error in connection with the trial court's findings or rulings, we affirm the trial court's judgment in all respects.

I

The parties' dispute concerns an apartment complex owned by Billingsley and located on Gaston Avenue in Dallas, Texas. In 2007, the City notified Billingsley that it was operating the complex as a residential hotel in violation of city code. Billingsley filed a lawsuit seeking a judgment declaring that it was not operating a residential hotel but rather a multifamily apartment complex as permitted by a specific zoning ordinance. The City counterclaimed for an injunction and civil penalties for zoning and other code violations. On November 2, 2009, the trial court granted the City's partial motion for summary judgment on its claims and its no-evidence motion for summary judgment on Billingsley's claims. A trial before the court was then scheduled in June 2010 to determine the amount of civil penalties for the code violations. After the trial, the trial court rendered judgment for the City and issued a permanent injunction preventing Billingsley from operating a residential hotel. Billingsley then filed a motion to modify that judgment, which the trial court granted. The trial court later signed an amended judgment that both parties take nothing on

their claims. It is from that judgment that the City appeals.

## II.

■■ In its first issue, the City challenges the legal and factual sufficiency of several of the trial court's adverse factfindings upon which it had the burden of proof. The City specifically challenges four of the trial court's findings involving particular elements of the city code's definition of a residential hotel.[1] To prevail on its legal sufficiency challenges, the City must demonstrate that the evidence establishes as a matter of law all vital facts to support that finding. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). We examine the record for evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could do so while ignoring all contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). When a party attacks the factual sufficiency of an adverse finding, we must consider and weigh all of the evidence and will set aside a finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.,* 46 S.W.3d at 242.

The applicable zoning ordinance for the area in which the Billingsley property is situated allows various residential uses including multifamily housing. The zoning ordinance, however, does not permit Billingsley's property to be used as a residential hotel or motel. *See* Dallas, Tex. Ordinance No. 23069, § 8(a)(1)(C) (1997). The city code defines a residential hotel as:

A facility that receives more than 50 percent of its rental income from occupancies of 30 consecutive days and contains: ... six or more guest rooms with living and sleeping accommodations, each of which is individually secured and rented separately to one or more individuals who have access to bathroom, kitchen, or dining facilities outside the guest room on a common basis with other occupants of the structure.

Dallas, Tex.Code § 51A–4.209(b)(5.1)(A)(iii).[2]

■ For the City to succeed on its legal sufficiency challenge, the evidence must establish conclusively all of the definitional elements challenged by the City, including the requirement that the property in question contain at least six guest rooms that were rented separately to one or more individuals.[3] *See City of Keller,* 168 S.W.3d at 827. Alternatively, we may set aside the trial court's finding only if the evidence is so weak or the findings so

1. The City specifically challenges the following trial court findings:

3. [A]t the time of trial, [Billingsley] offered apartment units for lease to tenant roommates and did not require, but did allow, roommates to place locks on individual doors within the apartment units.
4. At the time of trial, the bathroom, kitchen, or dining facilities in the apartment complex were not available on a common basis with all other occupants of the property. Rather, the bathroom, kitchen, or dining facilities in each unit were made available to all tenant roommates in such individual unit.

5. At the time of trial, [Billingsley] was not separately renting guestrooms to tenants or prospective tenants.
6. At the time of trial, [Billingsley] was not individually securing guestrooms to prospective tenants.

2. The applicability of the other residential hotel definitions in subsections (A)(i) and A(ii) are not at issue here.

3. Based on the trial evidence that all rentals were month-to-month tenancies, both parties agree that the evidence established conclusively the property met the statute's rental income requirement.

against the great weight and preponderance of the evidence that it is clearly wrong or unjust. *See Dow Chem.*, 46 S.W.3d at 242.

The evidence revealed that Billingsley holds a certificate of occupancy for the premises for use as a multifamily dwelling. The city inspector testified that on November 4, 2009, the City's last inspection of the property before trial, the owner's representative had keys to all 24 apartment units and a bucket of 58 keys to individual rooms. According to the inspector, what were originally living rooms in the apartments were walled and doored, making each apartment either a two- or three-unit rental. Each bedroom in the apartment unit shared the kitchen and bathroom for that apartment. Each bedroom was labeled with a letter A, B, or C and had a separate deadbolt lock on the door. The City inspector testified that he was not aware that the lettering had been removed since his inspection and had no idea how Billingsley was leasing the units other than what appeared in newspapers where Billingsley ran advertisements under the heading "Rooms for Rent."

Leroy Billingsley testified that the apartment complex had been using an apartment lease with roommate agreements since 2009. All current tenants had entered into an apartment lease for a particular apartment unit. The apartment leases were admitted into evidence. In the typical lease, the tenant acknowledges his obligation to pay the monthly apartment rate. The lease further provides that it may be subject to a separate roommate agreement. If a roommate agreement is signed, the tenant agrees to pay his portion of the monthly apartment rental as set forth in the roommate agreement. The apartment lease also provides that if it is subject to a roommate agreement, the tenant agrees that a specific bedroom in the apartment will be assigned to the tenant and any co-tenants will have the exclusive possession of their bedrooms.

The general manager of the property testified that the units are leased as apartments and there are no letters on the individual bedroom doors. He stated that the complex is not leasing on a bedroom by bedroom basis and had been doing roommate-apartment leases since August of 2009. According to the general manager, all tenants rent by the month and each tenant is responsible for the entire amount of the monthly rent for the apartment. Since last year, locks on individual bedroom doors were removed and, when rented, the bedroom door is not secured. A tenant may install a lock so long as he gives the landlord a key. The general manager testified specifically that the property does not have six or more guestrooms with living and sleeping accommodations, individually secured and rented separately to individuals who have access to a bathroom, kitchen or dining facilities outside the guestroom on a common basis with other occupants of the structure.

Additionally, certain advertisements from recent issues of *The Greensheet* circular were admitted into evidence. The complex advertised for shared apartments under the circular's heading "Rooms for Rent." The rental rate described was "$105/week $420 month."

The City contends the evidence at trial established conclusively that the property contained 62 bedroom units, each with separate living and sleeping accommodations, and a separate deadbolt door lock. It further contends the evidence established conclusively that each bedroom unit was rented out separately and the kitchen and bathroom within each apartment unit were shared by the occupants of each bedroom unit within the apartment. According to the City, this evidence establishes as a

matter of law that Billingsley was operating a residential hotel and the trial court erred to the extent it found to the contrary. We do not agree.

■ As noted above, among the elements the City has to establish conclusively or by a great weight and preponderance of the evidence to prevail on appeal is the requirement that the complex contain "six or more guest rooms ... that were rented separately to one or more individuals...." *See id.* The evidence before the trial court on this issue included Leroy Billingsley's testimony and that of his general manager that the complex no longer rented individual bedrooms and that all tenants now signed a lease for a particular apartment unit that may be subject to a roommate agreement in which co-tenants were assigned a particular bedroom unit for their exclusive possession. Billingsley's general manager further testified that the co-tenants of each apartment unit act as a single housekeeping unit and take turns cleaning the common areas of their apartment and share various kitchen items. The apartment leases specifically obligate each tenant to pay a monthly rent for the entire apartment unless a roommate agreement is entered into with co-residents of the apartment. In the separate roommate agreements, each co-resident of a unit agrees to share the expense of the rent set forth in the lease agreement and pay a specified portion of the total apartment rental.

Reviewing the record before us under the applicable standards of review set forth above, we cannot conclude the evidence established conclusively Billinglsey was separately renting six or more guestrooms at the time of trial or that the trial court's finding to the contrary was against the great weight and preponderance of the evidence. Our conclusion with respect to this trial court finding makes it unnecessary to address the remaining findings the City challenges under its first issue. We resolve the City's first issue against it.

In its second issue, the City asserts the trial court abused its discretion in failing to permanently enjoin Billingsley from operating a residential hotel under section 211.012 of the local government code. *See* TEX. LOCAL GOV'T CODE ANN. § 211.012(c) (West 2008). Because the City has failed to establish any error in connection with the trial court's adverse factfinding with respect to the separate rental of six or more guestrooms set forth in the residential hotel definition, it cannot show that Billingsley's use of the property at the time of trial was in violation of the applicable zoning ordinance.[4] Thus, the City's second issue complaining about the trial court's failure to grant its request for a permanent injunction against Billingsley necessarily fails.

■ In reaching this conclusion, we reject the City's contention that undisputed evidence that Billingsley admitted to renting separate rooms about three months before the city's last inspection compelled the trial court to issue the requested permanent injunction. Here, the trial court found Billingsley's former practice of renting out separate guestrooms had ceased before the City's last inspection and well before trial. Accordingly, the trial court did not clearly abuse its discretion in refusing to grant a permanent injunction with respect to conduct it found was no longer occurring, particularly when there was no evidence suggesting Billingsley intended to resume the practice. *See Priest*

---

4. As noted above, among the elements needed to satisfy the City's definition of a residential hotel, it must be shown that the facility had six or more guest rooms that were rented separately to one or more individuals. Dallas, Tex.Code § 51A–4.209(b)(5.1)(A)(iii).

*v.  Tex.  Animal  Health  Comm'n,* 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ) (we review trial court's action on permanent injunction request for a clear abuse of discretion).  We resolve the City's second issue against it.

We affirm the trial court's judgment.